Carole L. ARENZ, Plaintiff-Appellant,†

v.

Leo J. BRONSTON, D.C., William M. Sterba, D.C., Bronston Orthopedic-Chiropractic Clinics, and ABC Insurance Company, Defendants-Respondents,

Donna SHALALA, Secretary, Department of Health & Human Services, and Wisconsin Department of Health and Family Services, Subrogated Defendants.

Court of Appeals

*No. 98–1357. Submitted on briefs December 4, 1998.—Decided January 21, 1999.*

(Also reported in 592 N.W.2d 295.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James R. Koby* of *Parke O'Flaherty, Ltd.,* of La Crosse.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Christopher D. Wolske* of *Hinshaw & Culbertson* of Appleton.

Before Dykman, P.J., Vergeront and Deininger, JJ.

DYKMAN, P.J. Carole Arenz appeals from an order granting summary judgment in favor of Leo J. Bronston, D.C., William M. Sterba, D.C., Bronston Orthopedic-Chiropractic Clinics and ABC Insurance Company (hereinafter "Bronston and Sterba"), and from a judgment dismissing her complaint. The issue in this case is whether Arenz's claim against her chiropractors is governed by the medical malpractice statute of limitations set out under § 893.55, STATS.,[1] or the general personal injury statute of limitations set out under § 893.54, STATS.[2] Section 893.54 allows a

---

[1] Section 893.55, STATS., sets out the statute of limitations for filing medical malpractice claims, and it reads in pertinent part as follows:

> (1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
> (a) Three years from the date of the injury, or
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

[2] Section 893.54, STATS. sets out the statute of limitations for personal injury claims, and it reads as follows:

claimant to file suit within three years of discovering the harm or injury caused by the negligent act, whereas § 893.55 only allows a claimant to file suit within one year of discovering the harm or injury caused by the negligent act. The resolution of this issue ultimately depends on whether chiropractors are "health care providers" under § 893.55. We conclude that they are. Accordingly, we affirm.

## BACKGROUND

Arenz suffers from chronic back problems, which have required approximately twelve surgeries. In 1992, an electrical stimulation unit was surgically placed in her back to block pain impulses. From February 21, 1994 to April 12, 1994, Arenz went to Bronston and Sterba for chiropractic treatments. After these treatments, Arenz returned to Dr. Yue, her neurosurgeon, complaining that the intense pain in her back had returned.

On April 19, 1994, Dr. Yue performed surgery on Arenz's back and discovered that the leads to the stimulation unit were loose and that fluid had leaked into them, causing the unit to malfunction. Dr. Yue cleaned the leads and reconnected them. Dr. Yue later opined that Bronston and Sterba's manipulation of Arenz's back was partially responsible for the malfunction of the unit and for Arenz's reoccurring pain.

On April 18, 1997, almost three years after discovering her injury, Arenz filed a complaint alleging, among other things, that the negligent acts of Bronston

The following actions shall be commenced within 3 years or be barred:

(1) An action to recover damages for injuries to the person.

(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another.

and Sterba had caused her injuries. Bronston and Sterba filed a motion for summary judgment, asserting that the action should be dismissed because Arenz failed to file her complaint within the statutory period set out in § 893.55, STATS. Arenz argued that § 893.54, STATS., was the appropriate statute of limitations for filing a claim, not § 893.55, because chiropractors are not "health care providers" under § 893.55. The trial court concluded that chiropractors were "health care providers" under § 893.55, and dismissed Arenz's claim on summary judgment. Arenz now appeals.

### DISCUSSION

#### 1. *Statute of Limitations*

■

Arenz contends that the trial court erred in concluding that chiropractors qualify as "health care providers" under § 893.55, STATS. We review a trial court's grant of summary judgment de novo. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment is appropriate in cases in which there is no genuine issue of material fact and the moving party has established his or her entitlement to judgment as a matter of law. *See Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984).

■

Whether chiropractors are "health care providers" presents a matter of statutory interpretation, which we review de novo. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148, 149 (1996). We have previously set out the methodology that this court applies when interpreting a statute.

511

The ultimate goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. Our first inquiry is always to the language of the statute. If a statute is clear on its face, our inquiry ends, for we are prohibited from looking beyond the unambiguous language used by the legislature. However, if the language is ambiguous, we may look to the history, scope, context, subject matter, and object of the statute to discern legislative intent. Statutory language is ambiguous if reasonably well-informed individuals could differ as to its meaning.

*State v. Shea*, 221 Wis. 2d 418, 425, 585 N.W.2d 662, 665 (Ct. App. 1998) (citations omitted).

In *Clark v. Erdmann*, 161 Wis. 2d 428, 468 N.W.2d 18 (1991), the supreme court reviewed the language of § 893.55, STATS., and determined that the term "health care provider" is not ambiguous.[3] In *Clark*, the court was confronted with whether the statute of limitations in § 893.55 or § 893.54, STATS., applied to claims against podiatrists. To decide this issue, the court had to determine whether podiatrists were "health care providers" under § 893.55. The court reviewed the language of § 893.55 and concluded that:

The term "health care provider" in § 893.55, STATS., *plainly applies to anyone who professionally provides health care to others*. Podiatrists do exactly that: they provide health care to others; and, like other professional health care providers, they are licensed to practice by the state medical examining board pursuant to ch. 448, STATS. Accordingly, it is

---

[3] When the supreme court has concluded that a statute is unambiguous, we are bound by that decision. *See State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984) (appellate courts are bound by supreme court decisions).

our determination that "health care provider" under § 893.55 includes podiatrists.

*Clark*, 161 Wis. 2d at 438–39, 468 N.W.2d at 22 (footnotes omitted; emphasis added).

██

In *Doe v. American Nat'l Red Cross*, 176 Wis. 2d 610, 500 N.W.2d 264 (1993), the supreme court considered whether a blood bank, which allegedly failed to properly screen donors and test blood, qualified as a "health care provider" under § 893.55, STATS. In its analysis, the court reaffirmed that the term "health care provider" in § 893.55, STATS., is clear and unambiguous. *See id.* at 616, 500 N.W.2d at 266. It also reiterated that a health care provider is anyone who professionally provides health care to others. *See id.*

Based on this definition, the court held that blood banks were not "health care providers" under § 893.55, STATS. It noted that blood banks were different from podiatrists, because blood banks were not involved in the diagnosis, treatment or care of patients, and they were not licensed by a state examining board. *See id.* at 617, 500 N.W.2d at 266. It therefore concluded that Doe's claim was governed by the three-year statute of limitations set out in § 893.54, STATS.

In *Ritt v. Dental Care Assocs.*, 199 Wis. 2d 48, 543 N.W.2d 852 (Ct. App. 1995), we considered whether dentists were health care providers under § 893.55, STATS. After reviewing the supreme court's decisions in *Clark* and *Doe*, we concluded that dentists qualified as health care providers under § 893.55, STATS., because they are professional health care givers who: (1) are involved in the diagnosis, treatment or care of patients; and (2) are licensed by a state examining board. *See Ritt*, 199 Wis. 2d at 61–62, 543 N.W.2d at 856–57.

Arenz contends that the supreme court's definition of health care provider is ambiguous because it is over-inclusive. She asserts that by defining a health care provider as anyone who professionally provides health care to others, the supreme court has interpreted the term to encompass individuals that the legislature may not have intended. For example, she argues that under this definition nutritionists, massage therapists, holistic healers, acupuncturists, as well as many others would qualify as health care providers. We disagree. While the definition may be broad, it is not ambiguous.

In *Ritt*, we considered the definition of "health care provider." We held that § 893.55, STATS., applied to individuals who are: (1) involved in the diagnosis, treatment or care of the patient, and (2) licensed by a state examining board to provide such care. These two factors, particularly the second factor, clarify and limit the scope of the definition, and offer guidance to lower courts when applying the statute. Because we conclude that the statute is unambiguous, we need not consider its legislative history.[4]

---

[4] Arenz contends that because of alleged ambiguity surrounding the supreme court's definition of health care provider, we should turn to Chapter 655, STATS., for guidance. In particular, Arenz points to § 655.001(8), STATS., which states that the term "health care provider" includes a medical or osteopathic physician, a nurse anesthetist, a partnership of physicians or nurse anesthetists, a corporation with the primary purpose of providing the medical services of physician or nurse anesthetists, a nonprofit cooperative sickness care association, a hospital, an ambulatory surgery center, and other entities that work as part of a hospital. Since chiropractors are not included in this list, Arenz argues that they should not be considered "health care providers" under § 893.55, STATS., because the purposes of the two statutes are the same, which is to address what

In light of these two factors, we are satisfied that chiropractors are "health care providers" under § 893.55, STATS. They are involved in the diagnosis, treatment or care of their patients,[5] and they are licensed by a state examining board. *See* Ch. 446, STATS.[6] Therefore, we conclude that because Arenz did

the legislature saw as a crisis in the provision of medical care. *See Northwest Gen. Hosp. v. Yee,* 115 Wis. 2d 59, 67, 339 N.W.2d 583, 587 (1983).

Because we have concluded that the term "health care provider" is not ambiguous, our inquiry into legislative intent is complete. However, if we were to analyze Arenz's assertion, we would conclude, as the supreme court concluded in *Clark* and *Doe* and we concluded in *Ritt,* that it is faulty. In these cases, the petitioners argued that if the health care profession at issue was not included in § 655.001(8), STATS., then the profession should not be considered "health care providers" under § 893.55. This assertion was rejected in those cases, and we reject it in this context as well.

[5] In reaching this conclusion, we reject Arenz's assertion that an individual only qualifies as a "health care provider" if he or she is allowed to prescribe medicine or engage in invasive (surgical) procedures.

[6] Section 446.02(1), STATS., in particular, reads as follows:

(1) Except as provided in sub. (9), no person may engage in the practice of chiropractic or attempt to do so or hold himself or herself out as authorized to do so, unless such person:

(a) Is licensed by the examining board; and

(b) Meets the requirements of continuing education for license renewal as the examining board may require. During the time between initial licensure and commencement of a full 2-year licensure period new licensees shall not be required to meet continuing education requirements. Any person who has not engaged in the practice of chiropractic for 2 years or more, while holding a valid license under this chapter, and desiring to engage in such practice, shall be required by the examining board to complete a continuing education course at a school of chiropractic approved by

not file her complaint within one year after she discovered the harm or injury caused by Bronston and Sterba's alleged medical malpractice, her claim was properly dismissed as time barred.

## 2. *Due Process*

Arenz next claims that if we conclude that chiropractors are health care providers under § 893.55, STATS., then we should ensure that her constitutional due process rights were not violated. Specifically, she asserts that the trial court's decision to apply § 893.55 denied her a full and fair opportunity to be heard, and because she could not have anticipated that suits against chiropractors would be subject to the shorter statutory period for filing a claim, due process requires that we exercise our discretionary authority and reverse. We decline to do so.

Arenz failed to raise this issue at the trial court level, and has waived her right to raise it on appeal. *State v. Rogers*, 196 Wis. 2d 817, 828–29, 539 N.W.2d 897, 901 (Ct. App. 1995). We therefore do not address it.[7] However, she requests that we review the issue under our § 752.35, STATS., discretionary authority. We are permitted to exercise our discretionary authority under § 752.35 when it appears that the real controversy has not been fully tried, or that it is probable that justice has for any reason been miscarried. We are sat-

the examining board or pass a practical examination administered by the examining board or both.

[7] We express no opinion as to the effect, if any, of the due process clauses of the United States or Wisconsin Constitutions on this case.

isfied that the real controversy has been fully tried, and that there has been no miscarriage of justice.

While it is true that this is a case of first impression, the supreme court's decisions in *Clark* and *Doe*, which were published well before the underlying facts in this case occurred, provide a clear and unambiguous definition of a "health care provider." By defining a health care provider as "anyone who professionally provides health care to others," the court provided more than adequate notice to a prudent litigant with a potential claim against a chiropractor that it is likely his or her suit will be subject to the shorter statute of limitations under § 893.55, STATS. It is because the court articulated such a broad definition, that we decline to exercise our authority under § 752.35, STATS., and to grant a discretionary reversal. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.