Roger S. WEBB and Cynthia L. Webb, Plaintiffs-Appellants-Cross-Respondents,†

v.

OCULARRA HOLDING, INC., d/b/a Pearle Vision Express, and Travelers Indemnity Company, Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 99–0979–FT. Submitted on briefs August 16, 1999.—Decided December 28, 1999.*

## 2000 WI App 25

(Also reported in 606 N.W.2d 552.)

†Petition to review denied.

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Michael J. Happe* of *Kelly & Ryberg, S.C.*, of Eau Claire.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the brief of *Thomas J. Niemiec* of *Bassford, Lockhart, Truesdell & Briggs, P.A.*, of Minneapolis, Minnesota.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Roger Webb appeals from the trial court's grant of summary judgment to Ocularra Holding, Inc., d/b/a Pearle Vision Express (Pearle Vision). Webb argues that the trial court erred when it determined that the medical malpractice statute of limitations applied to his action seeking damages from a Pearle Vision optometrist who, he claimed, failed to note an abnormal test result from Webb's eye examination and to refer Webb to a medical specialist. Webb also contends that the trial court erred in determining that the medical malpractice statute of limitations had expired before he brought his action. Pearle Vision asks that we affirm the trial court's summary judgment decision, and it submits that summary judgment could be affirmed on another ground not granted by the trial court; that is, that Webb's summary judgment submissions were insufficient to prove that the optometrist had a duty to refer Webb to another medical care provider.

¶ 2. We conclude that the medical malpractice statute of limitations applies to Webb's action; that the action was time-barred; and that Webb failed to submit adequate affidavits to prove his claim of optometrist negligence. Consequently, we affirm both the trial court's conclusion that the medical malpractice statute of limitations applies and its determination that the statute of limitations expired prior to Webb's commencement of his suit. Although we affirm the trial

court's grant of summary judgment, we disagree with the trial court's determination that Webb's submissions were adequate to prove optometrist negligence.

## I. BACKGROUND.

¶ 3. On February 23, 1994, Webb made his first and only stop at a Pearle Vision store, where he had his eyes examined. He decided to have his eyes examined because he had been experiencing headaches and blurred vision, which he thought might be attributable to a change in his eyesight. Webb was examined by Dr. Larry Knutzen, a licensed optometrist employed by Pearle Vision. The examination of Webb's eyes lasted approximately forty-five minutes. Although Webb's recollection of the examination is scanty and he could not remember being asked any questions about his family medical history, he averred that, had he been asked any questions about his family medical history, he would have related a family history of brain disease and high blood pressure. Dr. Knutzen also had little independent recollection of his examination of Webb. In his deposition, he testified about Webb's eye examination with the aid of the Pearle Vision medical record generated at the time of the examination. Dr. Knutzen stated that the document revealed that Webb recited no unusual family medical history and he observed no other conditions which would have prompted him to refer Webb to another medical provider. Further, Dr. Knutzen testified that while Webb's eyesight was not perfect, the examination was unremarkable, revealing nothing unusual for a man of forty-two years of age. The Pearle Vision report also verified that Dr. Knutzen prescribed eyeglasses for Webb, which Webb purchased that day.

¶ 4. Webb continued to have headaches and, in February of 1995, he complained about them to his family doctor, Dr. Asplund. Dr. Asplund initially treated Webb for migraine headaches, but he also made arrangements for Webb to have a CAT scan. Before the date of the CAT scan, however, Webb was admitted to the emergency room suffering from acute headache pain. Shortly thereafter, a CAT scan was performed and Webb was diagnosed with having a meningioma, a slow-growing encapsulated brain tumor, which was subsequently surgically removed on February 27, 1995. Sometime in 1995, Webb inquired of his surgeon, Dr. Rankin, whether the tumor could have been detected by the optometrist. Dr. Rankin replied that he thought it was "possible." Webb then waited until April 1996 to contact a lawyer to explore the possibility of a lawsuit. On April 27, 1997, one of Webb's lawyers consulted with Dr. Roy Olson. Dr. Olson told the attorney that Dr. Knutzen was negligent; Dr. Olson said that he reviewed the medical record of the eye examination, and he detected an abnormality which should have prompted Dr. Knutzen to refer Webb to a medical specialist.

¶ 5. Webb commenced his suit on February 25, 1998. Pearle Vision brought a summary judgment motion, arguing that under the medical malpractice statute of limitations found in WIS. STAT. § 893.55,[2] Webb's suit was untimely. Pearle Vision also contended that Webb failed to provide sufficient proof to support his claim that, under the circumstances presented here, Dr. Knutzen had a duty to refer Webb to a medical care provider.

---

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 6. In response, Webb argued that the statute of limitations found in WIS. STAT. § 893.54, not § 893.55, applied to his action. Further, Webb asserted that if the medical malpractice statute of limitations did apply to his suit, his suit was timely because he did not discover his injury until Dr. Olson opined to his attorney that Dr. Knutzen was negligent. Alternatively, he argued that the discovery date of his injury is a factual determination, making it inappropriate for resolution by summary judgment. Finally, he maintained his summary judgment submissions were sufficient to prove that Dr. Knutzen was negligent.

¶ 7. The trial court found that the medical malpractice statute of limitations embodied in WIS. STAT. § 893.55 governed Webb's suit and found that the statute of limitations had run. The trial court, however, did find that Webb's supporting affidavits were sufficient and survived Pearle Vision's summary judgment challenge. Webb appeals and Pearle Vision cross-appeals.

## II. ANALYSIS.

### A. *The statute of limitations found in* WIS. STAT. *§ 893.55 controls this suit.*

¶ 8. Webb is suing Pearle Vision for damages allegedly caused by the delay in diagnosing his brain tumor. He claims the Pearle Vision optometrist should have detected evidence of his brain tumor and referred him to a medical specialist because his eye examination revealed an abnormal test result. Webb argues that the statute of limitations found in WIS. STAT. § 893.54 applies to his action, not the medical malpractice statute of limitations found in WIS. STAT. § 893.55.

¶ 9. Determining which statute of limitations applies to an action is a question of law that we review *de novo. See Ritt v. Dental Care Assocs.,* 199 Wis. 2d 48, 60, 543 N.W.2d 852 (Ct. App. 1995).

¶ 10. The medical malpractice statute of limitations, WIS. STAT. § 893.55, in pertinent part, reads:

> **Medical malpractice; limitation of actions; limitation of damages; itemization of damages.**
> (1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
> (a) Three years from the date of the injury, or
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

Webb argues that this is not a medical malpractice suit. Rather, Webb insists that the statute of limitations found in WIS. STAT. § 893.54 should apply. Section 893.54 provides:

> **Injury to the person.** The following actions shall be commenced within 3 years or be barred:
> (1) An action to recover damages for injuries to the person.

**(2)** An action brought to recover damages for death caused by the wrongful act, neglect or default of another.[3]

As support for his position, Webb notes that Dr. Knutzen is not a listed health care provider under the definitions found in WIS. STAT. § 655.001(8).[4] Section 655.001(8) reads: " 'Health care provider' means a person to whom this chapter applies under s. 655.002 (1) or a person who elects to be subject to this chapter under s. 655.002 (2)." Chapter 655 regulates health care liability and establishes the patients compensation fund. Webb argues that an "optometrist" is not found in WIS. STAT. § 655.002(1),[5] listing the mandatory participants of Chapter 655, nor is an

---

[3] *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983), adopted the discovery rule for all tort actions. Therefore, under this statute, Webb would have had three years to commence his suit after "discovering" his injury.

[4] In his reply brief, Webb argues for the first time that Pearle Vision is not a health care provider, but rather the employer of Dr. Knutzen and, thus, his suit against Pearle Vision is subject to the statute of limitations found in WIS. STAT. § 893.54. We will not entertain arguments raised for the first time in a reply brief. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981) (appellate court will generally not consider issues raised for the first time in a reply brief).

[5] WISCONSIN STAT. § 655.002(1) provides: .

**Applicability. (1)** MANDATORY PARTICIPATION. Except as provided in s. 655.003, this chapter applies to all of the following:
(a) A physician or a nurse anesthetist for whom this state is a principal place of practice and who practices his or her profession in this state more than 240 hours in a fiscal year.
(b) A physician or a nurse anesthetist for whom Michigan is a principal place of practice, if all of the following apply:
1. The physician or nurse anesthetist is a resident of this state.

"optometrist" found in § 655.002(2),[6] listing the optional participants of Chapter 655.

2. The physician or nurse anesthetist practices his or her profession in this state or in Michigan or a combination of both more than 240 hours in a fiscal year.

3. The physician or nurse anesthetist performs more procedures in a Michigan hospital than in any other hospital. In this subdivision, "Michigan hospital" means a hospital located in Michigan that is an affiliate of a corporation organized under the laws of this state that maintains its principal office and a hospital in this state.

(c) A physician or nurse anesthetist who is exempt under s. 655.003 (1) or (3), but who practices his or her profession outside the scope of the exemption and who fulfills the requirements under par. (a) in relation to that practice outside the scope of the exemption. For a physician or a nurse anesthetist who is subject to this chapter under this paragraph, this chapter applies only to claims arising out of practice that is outside the scope of the exemption under s. 655.003 (1) or (3).

(d) A partnership comprised of physicians or nurse anesthetists and organized and operated in this state for the primary purpose of providing the medical services of physicians or nurse anesthetists.

(e) A corporation organized and operated in this state for the primary purpose of providing the medical services of physicians or nurse anesthetists.

(f) A cooperative sickness care association organized under ss. 185.981 to 185.985 that operates a nonprofit sickness care plan in this state and that directly provides services through salaried employes in its own facility.

(g) An ambulatory surgery center that operates in this state.

(h) A hospital, as defined in s. 50.33 (2) (a) and (c), that operates in this state.

(i) An entity operated in this state that is an affiliate of a hospital and that provides diagnosis or treatment of, or care for, patients of the hospital.

(j) A nursing home, as defined in s. 50.01 (3), whose operations are combined as a single entity with a hospital described in par. (h), whether or not the nursing home operations are physically separate from the hospital operations.

[6] WISCONSIN STAT. § 655.002(2) provides:

¶ 11. Moreover, Webb posits that the legislative history of Chapter 655 buttresses his contention that the medical malpractice statute of limitations should not apply to his suit. Webb claims that the rationale behind Chapter 655 can be found in *Lund v. Kokemoor*, 195 Wis. 2d 727, 537 N.W.2d 21 (Ct. App. 1995). In *Lund*, this court explained that the motive behind the passage of Chapter 655 was the belief that "medical malpractice suits [were] rapidly increasing," *id.* at 734, and with the increase in suits came an increase in liability insurance, resulting in "many physicians refrain[ing] from providing certain health care services because of the high risk associated with those services," *id.* at 735. Webb gleans from these statements that the medical malpractice liability legislation was an attempt to hold down the cost of medical malpractice suits against physicians by, *inter alia*, establishing the patients compensation fund which would be supported by annual assessments to the fund by physicians and others who are required to pay into the fund. Webb argues that because optometrists are not among those required to pay into the fund, the legisla-

---

(2) OPTIONAL PARTICIPATION. All of the following may elect, in the manner designated by the commissioner by rule under s. 655.004, to be subject to this chapter:

(a) A physician or nurse anesthetist for whom this state is a principal place of practice but who practices his or her profession fewer than 241 hours in a fiscal year, for a fiscal year, or a portion of a fiscal year, during which he or she practices his or her profession.

(b) Except as provided in sub. (1) (b), a physician or nurse anesthetist for whom this state is not a principal place of practice, for a fiscal year, or a portion of a fiscal year, during which he or she practices his or her profession in this state. For a health care provider who elects to be subject to this chapter under this paragraph, this chapter applies only to claims arising out of practice that is in this state and that is outside the scope of an exemption under s. 655.003 (1) or (3).

ture never envisioned optometrists being regulated by Chapter 655 or WIS. STAT. § 893.55, its concomitant statute of limitations.

¶ 12. Were our analysis to stop here, we might be inclined to agree with Webb. However, the holdings in several recent cases run counter to Webb's arguments. The first case addressing the application of the medical malpractice statute of limitations to medical professionals besides physicians is *Clark v. Erdmann*, 161 Wis. 2d 428, 468 N.W.2d 18 (1991). In *Clark*, Dr. Erdmann, a podiatrist, raised a similar statute of limitations defense. Clark contended that the statute of limitations found in WIS. STAT. § 893.54, rather than the medical malpractice statute of limitations found in WIS. STAT. § 893.55, applied to his suit against Dr. Erdmann. In declaring otherwise, our supreme court stated that WIS. STAT. § 655.001(8) was "not particularly instructive" to an interpretation of § 893.55, but stated that if they were to use it anyway, it would support the broad definition adopted. *Clark*, 161 Wis. 2d at 439. The court then noted that during the time frame when Dr. Erdmann was alleged to have negligently treated Clark, § 655.001(8) actually contained the word "podiatrist" in describing who fell within the statute. *See id.* at 439–40. The supreme court reasoned that the legislature amended § 655.001(8) and replaced all the previously-listed affected professions with the more generic term "health care provider." *See id.* at 437–38. The supreme court then reasoned that because podiatrists are required to be licensed and fell within the definition of a "health care provider," as that term was used in § 893.55, the medical malpractice statute of limitations applied to podiatrists.

> The term "health care provider" in sec. 893.55, Stats., plainly applies to anyone who professionally

provides health care to others. Podiatrists do exactly that: they provide health care to others; and, like other professional health care providers, they are licensed to practice by the state medical examining board pursuant to ch. 448, Stats.

*Id.* at 438–39.

¶ 13. Although *Clark* does not conclusively establish that the medical malpractice statute of limitations applies to optometrists, because optometrists, unlike podiatrists, were never listed in WIS. STAT. § 655.001(8), nor are optometrists licensed by the state medical examining board, all doubt is removed by the later holdings in *Ritt* and *Arenz v. Bronston*, 224 Wis. 2d 507, 592 N.W.2d 295 (Ct. App. 1999). In *Ritt*, this court concluded that suits against dentists are subject to the medical malpractice statute of limitations. *See Ritt*, 199 Wis. 2d at 64 (concluding that dentists are included in the meaning of "health care provider" under the medical malpractice statute of limitations). This conclusion was reached even though dentists are licensed by the dentistry examining board under Chapter 447, unlike podiatrists, who are licensed by the state medical examining board under Chapter 448. In so finding, *Ritt* relied on a footnote in *Clark* that referenced all the other licensed professions in defining health care providers. The *Clark* footnote reads:

> Chapter 448, Stats., pertains to the licensing of physicians and physical therapists as well as podiatrists, and to the certifying of occupational therapists, occupational therapy assistants and respiratory care practitioners. Chapters 446, 447, 449, 451, and 455 pertain to the licensing or certifying of other professional health care providers.

*Clark*, 161 Wis. 2d at 439 n.5. Thus, in *Ritt*, we concluded that "*Clark* must be read to include those

licensed under the statutes listed in the footnote." *Ritt*, 199 Wis. 2d at 61.

¶ 14. In *Arenz*, the supreme court applied the analysis found in *Clark* and *Ritt* and determined that suits against chiropractors are also subject to the medical malpractice statute of limitations. *See Arenz*, 224 Wis. 2d at 515. The supreme court observed that because chiropractors are health care providers and are required to be licensed, they fall within the medical malpractice statute of limitations. *See id.* Moreover, the supreme court rejected the argument that the term "health care provider" is an ambiguous term, which can only be defined by looking at the legislative history. *See id.* at 514 n.4. "Because we conclude that the statute is unambiguous, we need not consider its legislative history." *Id.* at 514. Further, in response to an argument, raised in *Arenz* and reiterated by Webb here, that construing the statute so broadly would result in medical malpractice suits against inappropriate parties, such as massage therapists and cosmetologists, the supreme court noted that while the definition of health care provider may be broad, the two required factors would limit the scope of the definition. *See id.*

> In *Ritt*, we considered the definition of "health care provider." We held that § 893.55, STATS., applied to individuals who are: (1) involved in the diagnosis, treatment or care of the patient, and (2) licensed by a state examining board to provide such care. These two factors, particularly the second factor, clarify and limit the scope of the definition, and offer guidance to lower courts when applying the statute.

*Id.* at 514.

¶ 15. Thus, in applying the teachings of the cited cases, we conclude that even though optometrists are not listed in WIS. STAT. § 655.002(1) or (2) as either mandatory or optional participants of Chapter 655, optometrists fall within the ambit of the medical malpractice statute of limitations. This is so because optometrists provide medical care, *see* WIS. STAT. § 449.01 (defining the practice of optometry), and they are required to be licensed, *see* WIS. STAT. § 449.04 (requiring licenses to practice optometry). Thus, we conclude that the medical malpractice statute of limitations applies to Webb's action seeking damages from Dr. Knutzen for alleged professional negligence.

B. *As a matter of law, Webb failed to commence his lawsuit within one year of discovering his injury.*

¶ 16. We now address whether Webb's claim against Pearle Vision is barred by the statute of limitations found in WIS. STAT. § 893.55. The issue of whether Webb's action was time-barred under § 893.55 "involves the interpretation of a statute, which presents a question of law. We review this question of law *de novo*." *Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 821, 512 N.W.2d 216 (Ct. App. 1994) (citation omitted).

¶ 17. Pearle Vision argues that Webb started his suit against Dr. Knutzen after the statute of limitations expired. Pearle Vision contends that *Koschnik v. Smejkal*, 96 Wis. 2d 145, 291 N.W.2d 574 (1980), and *Olson v. St. Croix Valley Memorial Hospital, Inc.*, 55 Wis. 2d 628, 201 N.W.2d 63 (1972), *overruled by Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983), support its view that where there is a missed diagnosis, the day of the injury is the date of the

misdiagnosis.[7] Pearle Vision asserts that when Dr. Knutzen examined Webb's eyes and allegedly failed to detect evidence of a brain tumor revealed by the abnormal test result, this established the date of Webb's injury. Based on this assumption, Pearle Vision posits that the statute of limitations expired in February 1997, three years from the February 1994 eye examination. Alternatively, Pearle Vision argues that if the statute of limitations is evaluated using WIS. STAT. § 893.55(1)(b), then the suit had to be brought within one year from the date that Webb discussed with Dr. Rankin the possibility that Dr. Knutzen should have detected his brain tumor. Since this particular conversation with Dr. Rankin occurred some time in 1995, Pearle Vision claims that at the end of 1996, Webb's action became time-barred.

¶ 18. Webb disagrees and argues that if the medical malpractice statute of limitations applies, his suit is still timely because he did not discover his injury until April 27, 1997, when his attorney consulted with Dr. Olson, who told Webb's attorney that Dr. Knutzen was negligent. Webb, relying on *Goff v. Seldera*, 202 Wis. 2d 600, 550 N.W.2d 144 (Ct. App. 1996), also argues that the date on which he discovered his injury

---

[7] Pearle Vision also cites both cases for its assertion that the statute of limitations expired because the three years must run from the date of the eye examination. These cases are of little assistance in resolving that issue because they were decided before the adoption of the discovery rule in medical malpractice cases. "For many years, no provision was made by this court for extending accrual of a cause of action and the running of a period of limitations when an injury was not, in due diligence, immediately discovered." *Kohnke v. St. Paul Fire & Marine Ins. Co.*, 144 Wis. 2d 352, 359, 424 N.W.2d 191 (1988).

is more appropriately a jury question because it requires a factual determination.

¶ 19. With respect to Webb's last argument, we have concluded that this is a question of law and its resolution does not require a trial because the summary judgment record leads to only one reasonable conclusion about when Webb should have discovered his injury. Webb's reliance on *Goff* is misplaced. In *Goff*, this court observed that "[t]his is not a case in which the summary judgment record allows for but one reasonable conclusion about when Goff should have discovered her injury such that her claim is precluded as a matter of law." *Id.* at 612. By contrast, we are satisfied that this is a case where reasonable minds could not differ as to when Webb discovered or exercising reasonable diligence should have discovered his injury.

¶ 20. We are also satisfied that Webb's suit was time-barred. As noted, the provisions of WIS. STAT. § 893.55 provide that claims against health care providers must be brought within three years from the date of injury, or within one year from the date that the injury was discovered, or in the exercise of reasonable diligence should have been discovered. This action was filed on February 25, 1998. The only time Dr. Knutzen saw Webb was on February 23, 1994. Thus, any injury caused by Dr. Knutzen could only have occurred on the date of Webb's eye examination. Like the facts in *Olson*, the date of negligence and the date of injury were the same date. *Olson*, 55 Wis. 2d at 633. Given the wording of § 893.55(1)(a), Webb's suit was not started "within three years of the date of injury." Thus, the only possible way that Webb's suit can survive a statute of limitations challenge is under § 893.55(1)(b).

¶ 21. The discovery rule embodied in WIS. STAT. § 893.55(1)(b) permits an extension of the statute of limitations. It allows suit "one year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered." WIS. STAT. § 893.55(1)(b). Thus, the issue in this case turns on when Webb discovered his injury or exercising reasonable diligence should have discovered his injury. After reviewing the summary judgment submissions, we determine, as a matter of law, that Webb discovered his injury on the day in 1995 when Webb discussed Dr. Knutzen's alleged negligence with his neurosurgeon.

¶ 22. Webb argues that he discovered his injury only when Dr. Olson conferred with Webb's attorney and Dr. Olson stated that Dr. Knutzen was negligent.[8] We disagree. In *Clark*, the supreme court explained that discovery occurs when the "plaintiff has information that would constitute the basis for an objective belief of her injury and its cause." *Clark*, 161 Wis. 2d at 448. In *Claypool v. Levin*, 209 Wis. 2d 284, 562 N.W.2d 584 (1997), the supreme court elaborated on when a person discovers an injury. "In other words, discovery occurs when a potential plaintiff has information that would give a reasonable person notice of her injury and its cause. . . . This standard also does not require that the potential plaintiff know with certainty the cause of her injury." *Id.* at 300. Reasonable diligence has also been defined. Reasonable diligence "means such diligence as the great majority of persons would use in the

---

[8] As will be discussed later, Dr. Olson's expert opinion was not properly submitted in response to Pearle Vision's summary judgment motion. We have assumed, for the sake of our analysis, that Dr. Olson rendered an opinion on April 27, 1997, that Dr. Knutzen was negligent.

same or similar circumstances." *Spitler v. Dean*, 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989).

¶ 23. In applying these definitions to the facts present here, we determine that Webb knew or should have known of his injury, had he exercised reasonable diligence, when he inquired of Dr. Rankin whether the optometrist should have detected his brain tumor during his eye examination. Our determination is based upon the fact that Webb clearly harbored suspicions about the care rendered by Dr. Knutzen or he would never have asked Dr. Rankin whether the optometrist could have detected the tumor. Indeed, it was this same suspicion that led Webb to later consult with a lawyer. Moreover, we conclude that Webb failed to exercise reasonable diligence because when he was told that it was possible that Dr. Knutzen could have detected his brain tumor, he failed to reasonably act upon that information. Once his suspicion that Dr. Knutzen may have been negligent was confirmed by Dr. Rankin, Webb waited almost a year before consulting with an attorney.

¶ 24. Webb urges us to find that that he did not discover his injury until one of his attorneys consulted with Dr. Olson. We are not so persuaded. This identical argument was rebuffed in *Clark* when the court stated:

> "We do not believe, as [plaintiff's] argument suggests, that a party must be specifically advised by an expert that, in the expert's opinion, he or she received negligent treatment . . . before the injury may be considered to have been 'discovered'. All that is required is that the plaintiff knew or should have known that the injury existed and that it may have been caused by the defendant's conduct."

*Clark*, 161 Wis. 2d at 446 (quoted source omitted).

¶ 25. A similar argument was made in *Claypool*. There, Claypool was originally told by her first attorney that she had no cause of action. She only learned otherwise after changing law firms. Claypool argued, in urging the court to find her action under WIS. STAT. § 893.55(1)(b) timely, that she did not have an objective basis for concluding that her blindness was a result of her doctor's negligence until her new attorney told her so. That argument was rejected. The supreme court found that even though her first attorney incorrectly advised her of the viability of her claim, she already had an objective basis for knowledge of her injury and its cause. *See Claypool*, 209 Wis. 2d at 302–03.

¶ 26. Here, Webb knew of his brain tumor on the date that he asked Dr. Rankin the question about Dr. Knutzen because it had already been surgically removed. He knew that Dr. Knutzen failed to detect the tumor, and he was put on notice that Dr. Knutzen's negligence may have caused this failure. As a consequence, Webb's suit was untimely because the statute of limitations expired at the close of the 1996 calendar year.

C. *Pearle Vision is entitled to summary judgment because Webb failed to provide evidence that Dr. Knutzen was negligent.*

¶ 27. Pearle Vision contends that Webb's summary judgment submissions failed to support a claim against Pearle Vision. WISCONSIN STAT. § 802.08 governs summary judgment. Section 802.08(2) directs that "[t]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." In *Preloznik v. City of Madison*, 113 Wis. 2d 112, 334 N.W.2d 580 (Ct. App. 1983), we set out the methodology to be used in summary judgment:

> Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. . . . If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.

*Id.* at 116.

¶ 28. Pearle Vision posits that Webb failed to meet his summary judgment burden for two reasons. First, it contends that the affidavit of one of Webb's attorneys, relating a conversation he had with Dr. Roy Olson, at which time Dr. Olson opined that Dr. Knutzen was negligent, was not "made on personal knowledge," and did not "set forth such evidentiary facts as would be admissible in evidence." WIS. STAT. § 802.08(2). Further, Pearle Vision argues that Webb never established any connection between Dr. Knutzen's alleged negligence and Webb's damages.

¶ 29. Webb's submissions can best be summarized as follows: Webb does not remember much of

what occurred at the eye examination, but he thought that the optometrist stated he was having difficulty finding a prescription for his right eye. He does not recall whether Dr. Knutzen or anyone else asked him about his family and personal medical history. Had he been asked about his family medical history, he would have told the doctor that one of his brothers died of brain cancer in 1990, an aunt had an aneurysm, and there was a family history of high blood pressure. He does not recall Dr. Knutzen asking him if he was experiencing headaches, but had he been asked, he would have related that he had a history of headaches and the headaches were what caused him to seek an eye examination. Webb related that he was prescribed reading glasses which he purchased that day. Webb further stated that he continued to have headaches after obtaining the reading glasses. Webb recounted that the severity of the headaches increased and led to his consulting his family doctor. Eventually, he entered the hospital as an emergency room patient, and a CAT scan was ordered that revealed a tumor which was surgically removed in February 1995. He later had two related surgeries. He discussed the possibility of Dr. Knutzen's negligence with Dr. Rankin in 1995.

¶ 30. In Dr. Knutzen's deposition, he stated that he does not remember asking Webb about his family history, and the medical record notes no history that would have alerted him to look for another cause of Webb's complaint of poor eyesight. He diagnosed Webb as suffering from presbyopia, a condition that would not require him to refer Webb to a medical specialist. Dr. Knutzen testified that he did not recall encountering any difficulties during the eye examination and stated that while there are certain conditions under which he would be obligated to refer a patient to

another medical care provider, none of those conditions were present when he examined Webb.

¶ 31. In Dr. Rankin's affidavit, he noted that he was Webb's treating neurosurgeon. He also recounted that Webb suffered from a meningioma and that it was surgically removed. Further, Dr. Rankin stated that had Webb been diagnosed with the tumor earlier, "caring for the condition in 1994 would have been a simpler operation" and he observed that Webb's later operations posed greater risks to him and more expansive surgical work.

¶ 32. The affidavit of Webb's attorney, J. Drew Ryberg, claimed that he had Webb's case reviewed by Dr. Roy Olson, a certified ophthalmologist, and that Dr. Olson told him that Webb's eye examination at Pearle Vision "was not normal." Specifically, Attorney Ryberg's affidavit states that Dr. Olson felt the examination was not normal because "the inability to reconcile the acuity in both eyes was not a normal finding and something should have been done," meaning that Webb should have been referred to an "appropriate medical specialist."

¶ 33. Pearle Vision argues that Attorney Ryberg's affidavit is not admissible because it is not based on his personal knowledge. We agree. Attorney Ryberg's affidavit contained hearsay testimony and runs contrary to the requirements of WIS. STAT. § 802.08(3) that "supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." Case law is consistent. Affidavits in support of a motion for summary judgment made by persons who do not have personal knowledge are insufficient and will be disregarded, and affidavits made only on

the basis of the affiant's information and belief and mere assertions of ultimate facts are ineffectual to establish evidentiary facts. *See West Side Bank v. Marine Nat'l Exchange Bank*, 37 Wis. 2d 661, 665–66, 155 N.W.2d 587 (1968). Dr. Olson's non-evidentiary expert opinion should not have been considered at the hearing. Without Dr. Olson's opinion, the record contains no evidence of Dr. Knutzen's negligence. As a result, we overturn the trial court's determination that Webb's summary judgment submissions were sufficient. Because of our decision on Pearle Vision's contention that Attorney Ryberg's affidavits were improper, it is not necessary for us to address the remaining arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed). Accordingly, we affirm the trial court's determination that the medical malpractice statute of limitations applies and that Webb's suit was time barred.

　　*By the Court.*—Judgment affirmed.