Gary HANNEMANN, Plaintiff-Respondent,†

v.

Craig BOYSON, D.C., Defendant-Appellant.

Court of Appeals

*No. 03–1527. Submitted on briefs February 10, 2004.—Decided April 13, 2004.*

2004 WI App 96

(Also reported in 681 N.W.2d 561.)

† Petition for Review granted 9-16-04.

459

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick F. Koenen* of *Hinshaw & Culbertson*, Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John C. Peterson* and *Jolene D. Schneider* of *Peterson, Berk & Cross, S.C.*, Appleton.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Craig Boyson, a chiropractor, appeals a judgment finding him negligent in his care and treatment of Gary Hannemann. Hannemann suffered a stroke after Boyson gave him a cervical adjustment. Boyson argues the court erred by (1) eliminating the final paragraph from the standard informed consent jury instruction, and (2) giving a standard causation instruction rather than one that would allow the jury to find partial causation from another source. We disagree and affirm on these issues. Boyson further argues the special verdict was erroneous because it only

asked whether Boyson was negligent in his treatment. Boyson argues failure to obtain informed consent and negligent treatment are two different issues that require different verdict questions. We agree with Boyson on this issue and reverse that part of the judgment and remand for a new trial.

## BACKGROUND

¶ 2. Boyson saw Hannemann approximately forty times between July 22, 1996, and August 23, 1997, for neck and back treatments. Boyson explained the treatments he would perform, including risks and benefits. Boyson admits, however, that he did not discuss the risk of neurovascular injury because he thought the risk was "astronomical" and based on "controversial" research.

¶ 3. Hannemann claims Boyson injured him on August 21, 1997, while performing a cervical adjustment. Hannemann described the adjustment as involving Boyson placing his hands on either side of Hannemann's head and rotating or twisting the head until there was a crack. Hannemann claimed he experienced pain at the time of the adjustment, but by the time he left Boyson's office he no longer felt any pain. At trial, Boyson disputed Hannemann's description of the adjustment. He denied forcefully twisting or rotating Hannemann's head.

¶ 4. The next morning, Hannemann went to work. In the afternoon, he noticed his left leg "acting up." He called Boyson's office and scheduled an appointment for the next day, August 23. Hannemann stated that when he went in, Boyson performed reflex testing and did another cervical adjustment. Boyson denied performing a second adjustment during this visit. He recalled only gently stretching the muscles in

461

Hannemann's neck and advising him to go to the emergency room for an evaluation. Hannemann denies he was told to go to the emergency room, stating that he would have gone if Boyson had advised him to do so. Hannemann stated he continued to feel tingling in his leg after he left Boyson's office and his leg felt "different."

¶ 5. At approximately three the next morning, August 24, Hannemann awoke. He felt paralyzed on his left side. His wife took him to the emergency room. Initially, Hannemann was discharged. However, Hannemann and his wife returned to the hospital several hours later when Hannemann's condition did not improve. A neurosurgeon then determined his paralysis was caused by a stroke.

¶ 6. Hannemann commenced an action against Boyson, alleging Boyson negligently provided chiropractic treatment and caused permanent injury. A jury trial took place February 17–20, 2003. Hannemann argued Boyson was negligent in two respects. First, Boyson deviated from the standard of care in performing adjustments on August 21 and August 23. Second, Boyson failed to inform Hannemann of the risk of neurological injuries following cervical adjustments.

¶ 7. Several expert witnesses, as well as Hannemann's treating physicians, testified that the cervical adjustments caused the stroke. Defense experts disagreed. One testified Hanneman's earlier bout with meningitis was the cause.

¶ 8. At the jury instruction conference, Boyson asked that the court give Wis JI—Civil 1023.2, regarding informed consent. The court did so but deleted the last paragraph, which defines limits and exceptions to the duty to disclose.

¶ 9. Boyson also requested that the special verdict include the informed consent questions from WIS JI—CIVIL 1023.1. The court rejected this request and submitted a special verdict with only a single general question on negligence.

¶ 10. Boyson also requested WIS JI—CIVIL 1023.8, which would have instructed the jury to separate injuries caused by chiropractic care and those caused by meningitis. The court rejected this request and instead gave the standard cause instruction from WIS JI—CIVIL 1500.

¶ 11. The jury returned a verdict in favor of Hannemann, finding Boyson causally negligent. It awarded Hannemann $227,000.

## DISCUSSION

¶ 12. "The trial court has broad discretion when instructing a jury." *Fischer v. Ganju*, 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). "If an appellate court can determine that the overall meaning communicated by the instruction as a whole was a correct statement of the law, and the instruction comported with the facts of the case at hand, no ground[] for reversal exists." *White v. Leeder*, 149 Wis. 2d 948, 954–55, 440 N.W.2d 557 (1989). Moreover, "[e]ven if we find an instruction to be erroneous in part or in whole, a new trial is not warranted unless we also find that the error is prejudicial." *Muskevitsch-Otto v. Otto*, 2001 WI App 242, ¶ 6, 248 Wis. 2d 1, 635 N.W.2d 611. Accordingly, "an erroneous jury instruction is not fatal unless we are satisfied that it is probable—not merely possible—that the error affected the jury's determination." *Id.*

## A. Wis JI—Civil 1023.2

¶ 13. The court instructed the jury with the first three paragraphs of Wis JI—Civil 1023.2,[1] regarding Boyson's obligation to obtain informed consent. However, the pattern instruction also contains a fourth paragraph, which states:

> If (doctor) offers to you an explanation as to why (he) did not provide information to (plaintiff), and if this explanation satisfies you that a reasonable person in (plaintiff's) position would not have wanted to know that information, then (doctor) was not negligent.

Boyson argues it was error for the court to omit this paragraph. He maintains he explained to the jury why he did not inform Hannemann about the risk of stroke —Boyson believed the risk was "astronomical" and the

---

[1] The court instructed as follows:

A chiropractor has the duty to provide his patient with information necessary to enable the patient to make an informed decision about a procedure and alternative choices of treatments. If the doctor fails to perform this duty, he is negligent.

To meet this duty to inform his patient, the chiropractor must provide his patient with the information a reasonable person in the patient's position would regard as significant when deciding to accept or reject the medical treatment. In answering this question, you should determine what a reasonable person in the patient's position would want to know in consenting to or rejecting a medical treatment.

However, the chiropractor's duty to inform does not require disclosure of:

Information beyond what a reasonably, well-qualified chiropractor in a similar classification would know;

Extremely remote possibilities that might falsely or detrimentally alarm the patient[.]

464

studies regarding the risk were "controversial." Thus, Boyson argues the jury should have been instructed that if Boyson's explanation was reasonable, it could find he was not negligent by failing to inform Hannemann of the risk.

¶ 14. However, Boyson's explanation was covered by the first three paragraphs. These paragraphs stated that a chiropractor must provide information that a reasonable person in the patient's position would want to know. They also stated that a chiropractor is not required to disclose extremely remote possibilities. This was sufficient to cover Boyson's explanation that the risk was "astronomical" and the studies "controversial." Consequently, in this case, the fourth paragraph of the instruction would have merely repeated what the jury was already told within the first three paragraphs. It was not an erroneous exercise of discretion to omit the fourth paragraph from the instruction.

**B. WIS JI—CIVIL 1023.8**

■

¶ 15. Boyson next argues the court erred by not giving the jury the portion of WIS JI—CIVIL 1023.8 regarding causation but instead WIS JI—CIVIL 1500,[2] the standard cause instruction. Boyson notes that one expert witness testified that Hannemann's meningitis caused the injuries. Consequently, Boyson argues the

---

[2] The court did read to the jury the portion of WIS JI—CIVIL 1023.8 regarding negligence, but replaced the section on cause with WIS JI—CIVIL 1500:

> Questions in the special verdict asks about the cause of the injury. These questions do not ask about "*the* cause" but rather "*a* cause" because an injury may have more than one cause. An injury may be caused by one person's negligence or by the combined negligence of two or more people.

jury should have been instructed with Wis JI—Civil 1023.8 that it could separate the portion of the injury caused by meningitis from the portion caused by the adjustment.[3]

¶ 16. However, Boyson's expert witness testified that meningitis was the sole cause of Hannemann's injuries. He did not say that the meningitis and the adjustment were each causes. There was no evidence from which the jury could determine that the meningitis and the adjustment each partially caused the injuries. Consequently, Wis JI—Civil 1023.8 would have confused the jury as to the meaning of cause given the evidence presented in this case. Thus, Wis JI—Civil 1500 was proper.

### C. Wis JI—Civil 1023.1

¶ 17. Boyson argues the court erred by submitting a single verdict question about negligent treatment. Boyson contends the jury should also have been given verdict questions regarding failure to obtain informed consent. He argues negligence in treatment and negligence for failure to obtain informed consent are separate and distinct concepts. *See Johnson v. Kokemoor*, 199 Wis. 2d 615, 629 n.16, 545 N.W.2d 495 (1996).

---

You must decide whether someone's negligence caused the injury. Someone's negligence caused the injury if it was a substantial factor in producing the injury.

[3] In relevant part, Wis JI—Civil 1023.8 states:

It will, therefore, be necessary for you to distinguish and separate, first, the natural results in damages that flow from (plaintiff)'s original (illness) (injuries) and, second, those that flow from (chiropractor)'s treatment and allow (plaintiff) only the damages that naturally resulted from the treatment by (chiropractor).

466

¶ 18. Hannemann responds that Wis JI—Civil 1023.1, which contains the separate informed consent verdict, is to be used only in medical informed consent cases, not in chiropractic informed consent cases. Hannemann contends the informed consent verdict form is based on Wis. Stat. § 448.30,[4] which regulates the licensure of medical doctors. Since § 448.30 does not regulate chiropractors, he concludes the verdict form derived from the statute does not apply to chiropractors. Hannemann cites *Murphy v. Nordhagen*, 222 Wis. 2d 574, 588 N.W.2d 96 (Ct. App. 1998), for the proposition that a chiropractor has no duty under § 448.30 to obtain informed consent prior to treatment. In *Murphy*, we determined that § 448.30 applied only to physicians and so was "facially inapplicable" to chiropractic cases. *Id.* at 584. Thus, Hannemann concludes that a separate informed consent verdict was not necessary and the trial court correctly instructed the jury.

¶ 19. At the time we decided *Murphy*, chiropractors were not required to obtain informed consent. Since then, the law has changed to require chiropractors to obtain informed consent prior to treatment. The Chiropractic Examining Board created Wis. Admin. Code § Chir. 11.02(5),[5] which states: "Patient records shall include documentation of informed consent of the patient, or the parent or guardian of any patient under the age of 18, for examination, diagnostic testing and treatment."

---

[4] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[5] Wisconsin Stat. § 446.02 authorizes the Chiropractic Examining Board to create rules regulating the creation and maintenance of patient records.

¶ 20. Granted, Wɪꜱ JI—Cɪᴠɪʟ 1023.1 is based on Wɪꜱ. Sᴛᴀᴛ. § 448.30, which applies specifically to medical informed consent. However, the legal theories of informed consent for medical doctors and for chiropractors are the same. Further, the principles behind the theories are identical. It has long been recognized that individuals have the right to self-determination, including the right to refuse treatment in whole or in part. *See In re Guardianship of L.W.*, 167 Wis. 2d 53, 68, 482 N.W.2d 60 (1992). The United States Supreme Court has stated, "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Id.* (quoting *Union Pacific Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)).

¶ 21. This principle of self-determination has been extended to the doctrine of informed consent: "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent, commits an assault, for which he is liable in damages." *Id.* (quoting *Scholendorff v. Society of New York Hosp.*, 105 N.E. 92–93 (1914)). Our supreme court has recognized that the right to liberty under the state constitution "includes an individual's choice of whether or not to accept medical treatment." *L.W.*, 167 Wis. 2d at 69. These principles underlying the doctrine of medical informed consent apply with equal force to the doctrine of chiropractic informed consent. As our supreme court has observed, both medical doctors and chiropractors are

468

"health care providers." *Arenz v. Bronston*, 224 Wis. 2d 507, 515–16, 592 N.W.2d 295 (1999). Both are involved in the diagnosis, treatment or care of patients and both are licensed by state examining boards. *Id.* For these reasons, we conclude that Wis JI—Civil 1023.1 is a model for chiropractic negligence as well as medical informed consent.[6]

¶ 22. A special verdict must cover material issues of ultimate fact. *Flescher v. Wisconsin Patients Comp. Fund*, 256 Wis. 2d 848, 853, 650 N.W.2d 75 (2002). If it does not, it is defective. Wis. Stat. § 805.12(1). In order to succeed on a claim for failure to obtain informed consent, Hannemann must prove (1) that he was not informed of the risks, (2) that he would not have undergone the treatment had he known of the risks, and (3) the procedure caused the injury. *See id.* at 854. Here, the jury was not asked to determine whether all the elements were present. Instead, the jury only had to answer whether "Dr Craig Boyson [was] negligent with respect to his care and treatment of Gary Hannemann in August of 1997." The jury answered "yes." Thus, the verdict questions did not cover the material issues of ultimate fact necessary to prove Boyson failed to obtain Hannemann's informed consent. *See id.* at 853.

¶ 23. Hannemann argues that even if failure to submit informed consent verdict questions was error, it was harmless. We disagree. The standard for harmless

---

[6] Needless to say, the instruction must be modified in chiropractic cases to refer to chiropractors, not to medical doctors. For example, a chiropractor has a duty to inform about alternative, viable chiropractic modes of treatment, not medical modes. Further, a chiropractor need not inform a patient about information beyond what a reasonably well-informed chiropractor would know, not what a physician would know.

469

error is the same for civil, as well as criminal, cases. *Town of Geneva v. Tills*, 129 Wis. 2d 167, 184–85, 384 N.W.2d 701 (1986). The test is whether there is a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). A reasonable possibility of a different outcome is a possibility sufficient to "undermine confidence in the outcome." *Id.* at 545.

■

¶ 24. Here, our confidence in the verdict is undermined because we do not know whether the jury would have found that all three elements were present. Indeed, we do not know whether the jury found Boyson guilty of negligent treatment or failure to obtain informed consent. Thus, we conclude it is reasonably possible the error affected the jury's determination. *See id.* The error was not harmless. Consequently, we reverse that part of the judgment and remand the matter for a new trial.

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded with directions. No costs awarded.