Christine L. ELFERS, by her Guardian ad Litem, James A. Drill, Lorene Elfers, and Kevin Elfers, Plaintiffs-Appellants,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, John O. Simenstad, M.D., Donald G. Marsh, M.D., and Wisconsin Patients Compensation Fund, Defendants-Respondents.†

Court of Appeals

*No. 96–3516. Submitted on briefs September 15, 1997.—Decided October 28, 1997.*

(Also reported in 571 N.W.2d 469.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James A. Drill* and *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.*, New Richmond.

On behalf of the defendants-respondents, St. Paul Fire & Marine Insurance Company, John O. Simenstad, M.D., and Wisconsin Patients Compensation Fund, the cause was submitted on the brief of *Terence J. O'Loughlin* and *Matthew J. Hanzel* of *Geraghty, O'Loughlin & Kenney, Professional Association*, St. Paul, MN.

On behalf of the defendant-respondent, Donald G. Marsh, M.D., the cause was submitted on the brief of

*Thomas R. Jacobson* and *Brent R. Johnson* of *Lommen, Nelson, Cole & Stageberg, P.A.*, Hudson.

Amicus Curiae brief was filed by *David G. Peterson* of *Peterson, Johnson & Murray, S.C.* Milwaukee, for The Civil Trial Counsel of Wisconsin.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J. Christine L. Elfers and her parents, Lorene and Kevin Elfers, (collectively, "Christine") appeal a summary judgment dismissing her medical malpractice claim against Dr. John O. Simenstad; his insurer, St. Paul Fire & Marine Insurance Company; Dr. Donald G. Marsh; and Wisconsin Patients Compensation Fund. Christine contends that a genuine issue of material fact exists as to when she first suffered a compensable injury. We agree, and therefore reverse the summary judgment.[1]

In 1985, four-year-old Christine suffered an injury after falling from her bicycle. Simenstad treated her and diagnosed a fracture to her right arm, but failed to diagnose a right elbow dislocation caused by the same accident. Marsh, the radiologist who examined the x-rays, also failed to detect the right elbow dislocation.

Almost three years later, Christine injured her left arm in another fall. Christine had several follow-up visits for this injury, and in 1989 her right arm was x-rayed to contrast it with the left. These x-rays disclosed the dislocated right elbow, and Christine's parents were advised that she had sustained the dislocation in her 1985 bicycle accident. By the time of her 1989 visit,

---

[1] Christine also argues that the medical malpractice statute of limitations, as applicable to minors, is an unconstitutional denial of due process and equal protection. Because we reverse on other grounds, we do not address these arguments.

Christine had experienced no pain, motion limitation, observable physical deformity, or other symptoms from the first accident. Another follow-up visit in 1990 showed that Christine had a full range of motion with the right elbow and did "not require any routine followup unless there is any change in the overall appearance or function of the elbows." It was elected to leave the dislocation alone.

In the autumn of 1993 Christine began to suffer symptoms stemming from her right elbow dislocation. She was having trouble lifting and reaching with her right arm, as well as bending and stretching the elbow. Christine claims that the symptoms she is now experiencing are permanent. Her current treating physician believes that these symptoms and the residual difficulties would not have occurred if the right elbow dislocation had been diagnosed and treated immediately after the accident.

Christine filed a malpractice claim against Simenstad in 1996, and afterwards amended it to include Marsh and the insurers. The defendants moved for summary judgment, arguing that the statute of limitations had expired. The circuit court granted the motion for summary judgment and dismissed Christine's complaint, concluding that while it was difficult to pinpoint the start of the injury for statute of limitations purposes, the court was reasonably certain that the injury existed since 1988. Christine appeals.

■

Christine argues that summary judgment was improper because a material fact was in dispute—namely, the date of her injury. In reviewing a grant of summary judgment, we apply the same methodology as the trial court without deferring to the trial court's conclusions. *Trampf v. Prudential Property &*

*Casualty Co.*, 199 Wis. 2d 380, 384, 544 N.W.2d 596, 598 (Ct. App. 1996). "We independently examine the record to determine whether the moving party is entitled to judgment as a matter of law." *Id.*

To prevail on summary judgment, the defendants " 'must show a defense which would defeat the plaintiff.' " *Rach v. Kleiber*, 123 Wis. 2d 473, 479, 367 N.W.2d 824, 827 (Ct. App. 1985) (quoting *In re Estate of Johnson*, 113 Wis. 2d 126, 129–30, 334 N.W.2d 574, 576–77 (Ct. App. 1983)). The defendants in this case raise as a defense the statute of limitations, which if proved would be sufficient to defeat Christine's claims. *See* § 893.01, STATS. Our final step, then, is to review the record to see if a material fact is in dispute. *Rach*, 123 Wis. 2d at 479, 367 N.W.2d at 828.

We begin our analysis by reviewing the statute of limitations relied upon by the defendants. Section 893.56, STATS., is our starting point:

> Any person under the age of 18, who is not under disability by reason of insanity, developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment for operation performed by, or for any omission by a health care provider within the time limitation under § 893.55 or by the time that person reaches the age of 10 years, whichever is later. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section.

There is no allegation that Christine falls under one of the disabilities listed in this statute, and the record shows that she has reached the age of ten. We therefore must look to § 893.55(1), STATS., to provide the proper time limitation:

(1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

Before the time limitation under this statute begins to run, there must first be a negligent act and an injury caused by that act. *Meracle v. Children's Serv. Soc'y*, 149 Wis. 2d 19, 26, 437 N.W.2d 532, 534 (1989). For purposes of this appeal, it is assumed that the negligent act occurred in November 1985, the date of the failure to diagnose the dislocation.

The more difficult question is determining when the injury occurred. Both sides offer differing views. Christine contends that she was not injured until the symptoms developed in 1993, because until that time it was not reasonably certain that she would suffer ill consequences from the dislocation. The defendants contend that Christine was injured in 1985 when the misdiagnosis occurred, or at the latest in 1989 when she discovered the dislocation, because a dislocated elbow will always lead to a compensable injury.

Both sides correctly focus on the appropriate law. It is a well-settled rule that there cannot be an injury under the statute of limitations at least until there

exists a claim capable of enforcement. *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 315, 533 N.W.2d 780, 785 (1995); *Meracle*, 149 Wis. 2d at 26, 437 N.W.2d at 534. A claim is capable of enforcement only when it is reasonably certain that future expenses will occur. *Meracle*, 149 Wis. 2d at 27, 437 N.W.2d at 535.

The *Meracle* case is enlightening on this issue. That case involved a claim by adoptive parents that they were misinformed about their adopted child's susceptibility to Huntington's disease. The couple wanted a healthy child, and prior to the child's adoption were allegedly told that the child's natural father had tested negative for the disease. *Id.* at 23, 437 N.W.2d at 533. Subsequently, the Meracles learned that no reliable test existed. *Id.* Three years after learning that their child remained at risk, the child was diagnosed with Huntington's. *Id.* at 24, 437 N.W.2d at 533. The court held that the parents' injury occurred not when they were misinformed by the agency, but rather at the time the child actually developed the disease. *Id.* at 28, 437 N.W.2d at 535. The court reasoned that until that time there was no reasonable medical certainty the child would develop the disease; prior to then it was only a possibility. *Id.* at 27–28, 437 N.W.2d at 535.

The *Meracle* case demonstrates that it is essential to know when it became *reasonably certain* that Christine would suffer compensable damages as a result of the negligent act. Our independent review of the record fails to reveal when this occurred.[2] Furthermore, both

---

[2] Our review of the record also shows that the trial court struggled with the issue. At the close of plaintiffs' argument, the trial court said, "Well, I think what I'm finding about this is that it's a factual determination that I can't resolve." Later, in rendering its decision, the trial court stated, "We'll never resolve when this injury actually occurred and some fact finder, maybe

sides dispute the date. Under these circumstances, summary judgment is improper.

This does not mean that we agree with Christine's apparent contention that an asymptomatic dislocated elbow is not an injury. If this medical condition will inevitably result in some disability, the plaintiff has sustained an injury as of the date the failure to diagnose occurred. Our law does not permit a claimant who possesses a cause of action to wait until the full effect of the injury has developed before filing a claim. Unfortunately, the record is silent as to whether the dislocation could be benign for an entire lifetime, or whether the dislocation is reasonably certain to result in future disabilities. We therefore reverse and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.

Court of Appeals, might say that's a decision for the fact finder. Leave it up to them as to when this injury occurred and if they agree with [plaintiffs' counsel] he gets to keep whatever they've awarded him."