Joseph J. PAUL, Judith E. Paul, and The Estate of Jennifer Jo Paul, Plaintiffs-Appellants-Petitioners,

v.

Frederick C. SKEMP, Jr., M.D., ABC Insurance Company, Virginia A. Updegraff, M.D., DEF Insurance Company, Skemp Clinic, Ltd., and GEH Insurance Company, Defendants-Respondents,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant.

Supreme Court

*No. 99–1810. Oral argument February 28, 2001.—Decided May 3, 2001.*

2001 WI 42

(Also reported in 625 N.W.2d 860.)

508

For the plaintiffs-appellants-petitioners there were briefs by *James R. Koby* and *Parke O'Flaherty, Ltd.,* La Crosse, and oral argument by *James R. Koby*.

For the defendants-respondents there was a brief by *Virginia L. Newcomb, Patrick S. Nolan* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Madison, and oral argument by *Virginia L. Newcomb*.

An amicus curiae brief was filed by *Edward E. Robinson* and *Cannon & Dunphy, S.C.,* Brookfield, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. N. PATRICK CROOKS, J. The issue in this case is whether the statute of limitations for medical

malpractice claims in Wis. Stat. § 893.55 (1995–96)[1] bars this action. Joseph J. and Judith E. Paul, and the Estate of Jennifer Jo Paul (collectively the "Pauls") brought this action in La Crosse County Circuit Court against Dr. Frederick Skemp, Dr. Virginia Updegraff and the Skemp Clinic (collectively "Skemp"). The Pauls claim that Skemp misdiagnosed the cause of recurring headaches Jennifer suffered, and that the misdiagnosis resulted in the rupture of a malformed blood vessel in Jennifer's brain which subsequently caused her death. The circuit court, Judge John A. Damon presiding, concluded that the statute of limitations started running at the time of the last alleged misdiagnosis, when Jennifer last complained to Skemp about headaches; and that the Pauls' action was filed after that limitation period had run. The court of appeals agreed, and affirmed the circuit court. *Paul v. Skemp*, No. 99–1810, unpublished slip op. (Wis. Ct. App. June 8, 2000).

¶ 2. The Pauls contend here, as they have before the circuit court and court of appeals, that what triggered the statute of limitations was not the alleged misdiagnosis, but the injury that resulted from that misdiagnosis, the rupture of the blood vessel. We agree with the Pauls. A misdiagnosis may be a negligent omission, but it is not, in and of itself, an injury. The Pauls' claim for medical malpractice did not, and could not, accrue until Jennifer suffered an injury. Accordingly, because this action was filed within the limitations period triggered by Jennifer's injury, it is timely, and summary judgment in favor of defendants was improper. We thus reverse the decision of the court

---

[1] All subsequent references to the Wisconsin Statutes are to be the 1995–96 version unless otherwise indicated.

514

of appeals and remand the case to the circuit court for further proceedings.

## I

¶ 3. Jennifer Paul was 19 years old when she died. She first complained to the Skemp Clinic about headaches when she was 9 years old, in 1984. Over the next ten years, Jennifer complained about headaches at least one dozen times. She sometimes complained that vomiting or nausea accompanied the headaches, and sometimes complained about dizzy spells.

¶ 4. On November 20, 1994, Jennifer saw Dr. Skemp and indicated that she had suffered from headaches for some time. Dr. Skemp concluded, as others at Skemp had over the past 10 years, that Jennifer's headaches were probably sinus related. A month later, on December 20, 1994, Jennifer saw Dr. Updegraff and complained of "persistent headaches and dizzy spells over the past year," as well as frequent nausea. (R. at 8:63.) Dr. Updegraff also concluded that Jennifer may have been suffering from a sinus problem.

¶ 5. Jennifer's last visit to the Skemp Clinic was on March 17, 1995. She saw Dr. Theodor Habel, and according to the medical records, complained only of a sore throat. The morning of May 22, 1995, Jennifer was taken to an emergency room. There, it was found that an arteriovenous malformation ("AVM") in Jennifer's right cerebellum had ruptured, causing extensive hemorrhaging. Jennifer died on May 23, 1995.

¶ 6. On March 16, 1998, the Pauls filed a complaint against the Skemp defendants.[2] The complaint alleges that the defendants failed to diagnose the AVM

---

[2] Employers Insurance of Wausau was originally a Plaintiff-Subrogee, but was later dismissed.

and misdiagnosed the cause of Jennifer's headaches. In the complaint, Joseph J. and Judith E. Paul, Jennifer's parents, seek damages for the loss of society and companionship. The Pauls also seek survivor damages; and the Estate of Jennifer Jo Paul seeks damages for the fear, pain and suffering allegedly suffered by Jennifer prior to her death.

¶ 7. Skemp moved for summary judgment, contending that the lawsuit was not timely filed. The circuit court agreed, granted summary judgment, and dismissed the action. The Pauls appealed. The court of appeals affirmed, and this court granted the Pauls' petition for review.

## II

¶ 8. This court reviews summary judgment decisions by employing the same methodology used by the circuit court in deciding motions for summary judgment. First, the court reviews the pleadings to determine whether a claim has been stated, and if so, whether there are disputed issues. *Tamminen v. Aetna Cas. & Sur. Co.*, 109 Wis. 2d 536, 550, 327 N.W.2d 55 (1982). There is no dispute that the Pauls have stated a claim for negligence and that there are disputed issues regarding that claim.

¶ 9. Notwithstanding a dispute on the merits, a defendant may be entitled to summary judgment by establishing that the action was not filed within the limitations period set forth in the statute of limitations.

> If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's (in this case the

defendants') affidavits or other proof to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 802.08(2). To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff. If the moving party has made a *prima facie* case for summary judgment, the court must examine the affidavits and other proof of the opposing party (plaintiffs in this case) to determine whether there exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial.

*Id.* (quoting *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980)).

¶ 10. Whether, as Skemp contends, the action is time-barred by the statute of limitations that governs medical malpractice actions, Wis. Stat. § 893.55, involves statutory construction. Such statutory construction is a question of law, which we review *de novo*, even though we benefit from the analyses of the circuit court and the court of appeals. *Czapinski v. St. Francis Hosp.*, 2000 WI 80, ¶ 12, 236 Wis. 2d 316, 613 N.W.2d 120; *see also Patients Compensation Fund v. Lutheran Hosp.*, 223 Wis. 2d 439, 454–55, 588 N.W.2d 35 (1999). "A court will not ordinarily engage in statutory construction unless a statute is ambiguous. 'When a statute is plain and unambiguous, interpretation is unnecessary and intentions cannot be imputed to the legislature except those to be gathered from the terms of the statute itself.' " *Czapinski*, 2000 WI 80 at ¶ 17 (citing and quoting *Harris v. Kelley*, 70 Wis. 2d 242, 249, 234 N.W.2d 628 (1975)).

## III

¶ 11. As just noted, the statute at issue is Wis. Stat. § 893.55(1). Section 893.55(1) provides that:

[A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

¶ 12. Skemp contends that Wis. Stat. § 893.55(1) bars the Pauls' action because the action was filed more than three years after Jennifer's injury. According to Skemp, Jennifer's injury is the alleged misdiagnosis, which last occurred when Jennifer last complained about her headaches to Dr. Virginia Updegraff on December 20, 1994. This action was not filed until March 16, 1998. Skemp also contends that the Pauls' action is untimely because the Pauls discovered Jennifer's injury, at the very latest, on the day she died, May 23, 1995; correspondingly, the Pauls' action should have been filed one year after the Pauls discovered Jennifer's injury, by May 23, 1996.

¶ 13. In contrast, the Pauls contend that the injury that triggered the statute of limitations in Wis. Stat. § 893.55(1) is the rupture of the AVM in Jen-

nifer's brain and the resultant hemorrhaging. That injury occurred on May 22, 1995, and, according to the Pauls, the action was timely filed, less than three years later, on March 16, 1998. The Pauls additionally submitted, in opposition to Skemp's motion for summary judgment, an affidavit from an expert witness, who concluded, to a reasonable degree of medical certainty, that had Jennifer's AVM "been properly diagnosed at any time prior to May 1, 1995, it is more likely than not that [Jennifer] would not have sustained the injury and disability she ultimately experienced on May 22, 1995." (R. at 11:5.)

¶ 14. The Pauls also contend that, alternatively, Jennifer complained about her headaches to Dr. Habel when she last visited Skemp on March 17, 1995. Even though the medical records do not reflect that complaint, the Pauls point to Judith Paul's deposition testimony that Jennifer had told her that she had complained about her headaches to Dr. Habel. The Pauls also point to an affidavit from Jennifer's boyfriend, Kevin Mason, that Jennifer told him before the appointment that she intended to complain about her headaches, and that Jennifer told him after the appointment that she had complained to Dr. Habel. Correspondingly, according to the Pauls, the last negligent act by defendants was March 17, 1995, and this action was timely filed within three years, on March 16, 1998.
█

¶ 15. The running of the statute of limitations turns on when the claims accrue, as compared to when the action is filed. "[A] period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced." Wis. Stat. § 893.04. "An action is

commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons naming the defendant and the complaint are filed with the court. . . ." Wis. Stat. § 893.02.

¶ 16. Although "[t]his court has the power to establish when claims accrue," the legislature has established when medical malpractice claims accrue in Wis. Stat. § 893.55(1). *Hansen v. A.H. Robins*, 113 Wis. 2d 550, 559, 335 N.W.2d 578 (1983). The plain language of § 893.55(1) indicates that medical malpractice claims accrue at the time of an injury or the discovery of an injury.[3] That is, there is an injury rule of accrual in § 893.55(1)(a), and a discovery rule of accrual in § 893.55(1)(b). The running of the limitations period is correspondingly triggered by the injury or the discovery thereof.

¶ 17. That an injury or the discovery of an injury triggers the limitation periods in Wis. Stat. § 893.55(1) reflects that àn injury is an element of a medical malpractice claim. A claim for medical malpractice, as all claims for negligence, requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. *See Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 462, 475, 529 N.W.2d 594 (1995). In short, a claim for medical malpractice requires a negligent act or omission that causes an injury.

---

[3] The phrase the "discovery of an injury" as used herein also embraces that part of Wis. Stat. § 893.55(1)(b) which includes not only the discovery of an injury, but that point in time when, in the exercise of reasonable diligence, the injury should have been discovered.

¶ 18. Here, there is no dispute that the alleged negligence is an "omission" under Wis. Stat. § 893.55(1)—the failure to correctly diagnose the cause of Jennifer's headaches. However, Skemp contends that the alleged misdiagnosis, or misdiagnoses, is not only the omission, but also the injury that triggers the statute of limitations in § 893.55(1)(a).

¶ 19. If, as Skemp suggests, the alleged misdiagnosis is both the negligent omission and the injury, then the introductory paragraph of Wis. Stat. § 893.55(1) would read, unintelligibly, that "[a]n action to recover damages for [an omission] arising from. . .any omission by. . .a person who is a health care provider," etc. Also, if § 893.55(1)(a) were constructed based upon Skemp's contention that a negligent omission was also the injury, then both the injury and discovery rules of accrual in § 893.55(1) would be changed into a negligence-based rule of accrual. A medical malpractice claim would then have to be filed within the later of three years from the date of the omission or one year from the discovery of the omission.

¶ 20. The legislature did not intend that "omission" and "injury" would be so conflated. The plain language of Wis. Stat. § 893.55(1)(a) indicates that it is not the negligence, but the injury resulting from the negligent act or omission which initiates the limitations period. It is evident from the face of § 893.55(1) that a medical malpractice claim accrues when there is an injury, or the discovery thereof, which arose from an omission by a health care provider. This corresponds with the long-standing common law rule that a tort claim does not accrue until there is an injury.

> We have held that the time of the negligent act alone is not the key to accrual of tort claims. . . .A tort claim is not capable of enforcement until both a negligent act and an accompanying injury have occurred. Although the negligence and resulting injury are often simultaneous, occasionally an injury will not be sustained until a subsequent date. Therefore, we have held that tort claims accrue on the date of injury.

*Hansen*, 113 Wis. 2d at 554 (internal citations omitted).

¶ 21. Here, we have a case wherein the alleged negligence and the resulting injury did not occur concurrently. The alleged negligence—the failure to correctly diagnose the source of Jennifer's headaches, preceded the resulting injury—the rupture of the AVM and subsequent hemorrhaging. Skemp effectively contends that the negligence and injury occurred simultaneously, as evidenced by Jennifer's continued headaches. However, Jennifer's headaches were the condition that existed both before and after Skemp examined and diagnosed her. Consequently, Skemp's failure to properly diagnose the headaches could not have caused those headaches.[4]

> In every misdiagnosis case, the patient has some type of medical problem at the time the physician is consulted. But the injury upon which the cause of action is based is not the original detrimental condition; it is the injury which later occurs because of the misdiagnosis and failure to treat.

---

[4] It is noteworthy that Skemp's counsel conceded, correctly, during oral argument, that as of December 21, 1994, the day after Jennifer saw Dr. Updegraff, Jennifer's medical malpractice claim had not yet accrued—even though that is the date Skemp contends that the statute of limitations began to run.

*St. George v. Pariser*, 484 S.E.2d 888, 891 (Va. 1997).

¶ 22. In *St. George v. Pariser*, Dr. Pariser had performed a biopsy on a mole of Linda St. George on June 13, 1991. He diagnosed the mole as benign. In March 1993, St. George went to a plastic surgeon about removing the mole, and the surgeon requested Pariser's records. Pariser again reviewed the tissue sample of the mole and then diagnosed it as cancerous. *Id.* at 889. However, by that time, the cancer, a malignant melanoma, had invaded St. George's dermis, where it was potentially fatal. *Id.* at 891.

¶ 23. On October 21, 1993, St. George filed suit against Pariser. *Id.* St. George moved the trial court to find, as a matter of law, that her action was timely under Virginia's statute of limitations which bars any action that is filed two years after the date of injury. *Id.* at 890. The trial court declined to make such a finding and submitted the question to the jury, which found the action untimely. *Id.* St. George appealed contending that the injury was not the cancer she had when she consulted Dr. Pariser. The Virginia Supreme Court agreed:

> St. George's actionable injury was not the generic disease of cancer or the cancer "in situ" which she had when she sought evaluation of the mole in 1991. Pariser's negligence could not have been the cause of that medical condition. St. George's injury was the change in her cancerous condition which occurred when the melanoma altered its status as "melanoma in situ," a biologically benign condition, to "invasive superficial spreading malignant melanoma" in the dermis which allowed the melanoma cells to metastasize to other parts of the body. At this point, St. George's cancer, according to the

expert testimony, was no longer 100 percent curable because the cancer could metastasize and recur.

*Id.* at 891. Given that the evidence indicated that the melanoma invaded the dermis after January 1992, the Virginia Supreme Court concluded that Pariser had not proven that St. George's action which was filed less than two years later, was untimely. *Id.* at 892.

¶ 24. In concluding that Pariser's misdiagnosis was not the injury that triggered the statute of limitations, the Virginia Supreme Court relied upon a number of cases wherein the actionable injury was that injury caused by the misdiagnosis, not the condition for which the patient initially sought medical treatment.

> [I]n *Lo v. Burke,* the actionable injury was not the cyst the plaintiff had when she went to the doctor, although this was a medical problem which should have been treated. The injury at issue was the cancer which developed from the cyst. 249 Va. at 315–17, 455 S.E.2d at 12–13. Similarly, in *Jenkins v. Payne,* 251 Va. 122, 465 S.E.2d 795 (1996), the injury was the wrongful death of a patient who presented to the physician with a cancerous condition which was not diagnosed or treated before the condition became terminal. See also *Renner v. Stafford,* 245 Va. 351, 429 S.E.2d 218 (1993) (actionable injury was condition caused by improper treatment rendered because of misdiagnosis). "Where a medical malpractice claim is based on a misdiagnosis or failure to diagnose a condition, the 'injury'. . .is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment." *DeBoer v. Brown,* 138 Ariz. 168, 673 P.2d 912, 914 (Ariz.

*St. George v. Pariser,* 484 S.E.2d at 891.

¶ 25. Although a decision from the Virginia Supreme Court is certainly not binding precedent for this court, the reasoning therein is persuasive.[5] A misdiagnosis, in and of itself, is not, and cannot, be an actionable injury. The misdiagnosis is the negligent omission, not the injury. The actionable injury arises when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis. This comports with Wis. Stat. § 893.55(1), i.e., that the "injury arising. . .from any omission" instigates the limitations period, not the omission.

¶ 26. Skemp contends that there is authority that, notwithstanding the unambiguous language of Wis. Stat. § 893.55(1), a misdiagnosis, without more, is an injury that results in an accrual of a medical malpractice claim: *Koschnik v. Smejkal*, 96 Wis. 2d 145, 153, 291 N.W.2d 574 (1980); *Elfers v. St. Paul Fire & Marine Ins. Co.*, 214 Wis. 2d 499, 571 N.W.2d 469 (Ct. App. 1997); and *Webb v. Ocularra Holding, Inc.*, 232 Wis. 2d 495, 606 N.W.2d 552 (Ct. App. 1999). However, insofar as these cases suggest that a medical malpractice claim accrues before there is an injury that has resulted from a misdiagnosis—a negligent omission, these cases run counter to long-standing precedent that a cause of action does not accrue unless there is an injury that has resulted from the alleged negligence.

---

[5] We have previously followed the guidance and reasoning of the Virginia Supreme Court in the area of medical malpractice. *See Tamminen v. Aetna Cas. & Sur. Co.*, 109 Wis. 2d 536, 555–56, 327 N.W.2d 55 (1982) (followed Virginia cases in determining what triggers the limitations period where there is a continuing course of negligent treatment).

It is well settled that a cause of action accrues when there exists a claim capable of enforcement. . . . A party has a present right to enforce a claim when the plaintiff has suffered actual damage, defined as harm that has already occurred or is reasonably certain to occur in the future.

*Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 315, 533 N.W.2d 780 (1995) (internal citations omitted).

¶ 27. In *Koschnik*, Marie Koschnik alleged that she fractured her spine in an automobile accident and that she was injured as a result of Dr. Smejkal's failure to diagnose the fracture: one, "the fracture remained untreated, causing her personal injury;" and two, Koschnik relied upon Smejkal's report that failed to note the fracture to settle her claims, to her detriment, against the other party to the accident. 96 Wis. 2d at 148. Koschnik commenced her action on September 22, 1976. *Id.* at 147. The court concluded that the action was time-barred because it was not brought within the three-year limitation period that applied to medical malpractice actions at that time. *Id.* at 152–53.

¶ 28. *Koschnik* is first distinguishable because it arose under a different statutory scheme. At the time that Koschnik brought her claim, in 1976, there was no specific limitations statute for medical malpractice actions. Instead, medical malpractice actions were brought under a personal injury limitations statute, Wis. Stat. § 893.205.[6] *Id.* at 146. Section 893.205 provided that "[a]n action to recover damages for injuries to the person for such injuries sustained on and after July 1, 1955. . . ." must be brought within three years

---

[6] Wisconsin Stat. § 893.205 was amended and renumbered as Wis. Stat. § 893.54, effective July 1, 1980. Ch. 323, Laws of 1979.

after the cause of action accrued. *Id.* at 146 n.1; *see also Rod v. Farrell*, 96 Wis. 2d 349, 350–51, 291 N.W.2d 568 (1980). The legislature did not dictate the time of accrual of claims brought under § 893.205, as it later did in § 893.55(1). *See Hansen*, 113 Wis. 2d at 559. Instead, this court determined when a medical malpractice claim accrued under § 893.205.

> The word accrued is not defined by statute. This court has held that a cause of action for personal injuries due to medical malpractice accrues, and therefore the statute of limitation begins to run, "at the time the negligent act occurs with accompanying injury." *Peterson v. Roloff*, 57 Wis. 2d 1, 4, 203 N.W.2d 699 (1973). *See also Reistad v. Manz*, 11 Wis. 2d 155, 105 N.W.2d 324 (1960), *McCluskey v. Thranow*, 31 Wis. 2d 245, 142 N.W.2d 787 (1966), *Volk v. McCormick*, 41 Wis. 2d 654, 165 N.W.2d 185 (1969), and *Olson v. St. Croix Valley Memorial Hospital*, 55 Wis. 2d 628, 201 N.W.2d 63 (1972).

*Rod v. Farrell*, 96 Wis. 2d at 352–53.[7] Since *Koschnik*, the common law rule of accrual has been replaced with

---

[7] These cases were all overruled in part by *Hansen v. A.H. Robins*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983) when *Hansen* adopted the discovery rule of accrual for personal injury actions for which there was not already a legislatively-created discovery rule. Wisconsin Stat. § 893.55(1)(b) is such a legislatively-created discovery rule for medical malpractice actions. *Id.* at 557. For other personal injury actions, those governed by the personal injury statute of limitations in § 893.54, the discovery rule of accrual applies. The discovery rule of accrual in such cases is that "a cause of action does not accrue until the nature of the injury *and* the cause—or at least a relationship between the event and the injury—is or ought to have been known to the claimant." *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 407, 388 N.W.2d 140 (1986) (emphasis in original).

§ 893.55(1), rendering *Koschnik* of little precedential value.

¶ 29. *Koschnik* is also of little precedential value because its conclusion runs counter to the cases it relies upon. Without providing any reasoning, *Koschnik* summarily concluded that "under our established construction of sec. 893.205, Stats., in medical malpractice cases, the cause of action accrued at the time of the misdiagnosis. The injury to Marie Koschnik became fixed on that date." 96 Wis. 2d at 153. *Koschnik* then cites to the same cases that *Rod v. Farrell* did—*Peterson, Reistad, McCluskey, Volk,* and *Olson.* However, as noted above, these cases all held that the cause of action accrued when there was a negligent act *accompanied by an injury.* In concluding that Marie Koschnik's claim accrued at the time of the misdiagnosis, without specifying the injury caused by the misdiagnosis, *Koschnik* apparently concluded that the misdiagnosis was the injury. (Even though elsewhere, the opinion indicated that the alleged misdiagnosis was the not the injury, but rather the cause of the alleged injury, which was claimed to be the diminution of Koschnik's settlement. *Koschnik,* 96 Wis. 2d at 152.) Accordingly, insofar as *Koschnik* concluded that the misdiagnosis was the injury, it cannot be reconciled with the cases upon which it relies, nor with our holding here today. Nor can *Koschnik* be reconciled with the long-standing precedent, stretching both before and beyond *Koschnik,* that there is no accrual of a medical malpractice claim until there is an injury that resulted from the malpractice. Any language in *Koschnik* to the contrary is hereby withdrawn.

¶ 30. Similarly, insofar as *Webb v. Ocularra Holding, Inc.,* 232 Wis. 2d 495, 606 N.W.2d 552 (Ct. App. 1999), upon which Skemp also relies, suggests

that a misdiagnosis is, in and of itself, an injury, it is also in error. In *Webb*, Roger Webb brought a medical malpractice claim against Pearle Vision alleging that an eye exam by a Dr. Knutzen should have resulted in a diagnosis of a slow-growing brain tumor. 232 Wis. 2d at 499–500. The court of appeals concluded that the action was untimely filed. "This action was filed on February 25, 1998. The only time Dr. Knutzen saw Webb was on February 23, 1994. Thus, any injury caused by Dr. Knutzen could only have occurred on the date of Webb's eye examination. Like the facts in *Olson*, the date of negligence and the date of injury were the same date. *Olson*, 55 Wis. 2d at 633." *Webb*, 232 Wis. 2d at 511.

¶ 31. First, *Webb*, like *Koschnik*, does not identify the injury caused by the misdiagnosis, but only summarily concludes that the negligence and the injury occurred simultaneously. *Webb*, 232 Wis. 2d at 511; *see also Koschnik*, 96 Wis. 2d at 153. Apparently, as in *Koschnik*, *Webb* assumed that the misdiagnosis was the injury. *Webb*, 232 Wis. 2d at 511. However, as we have previously stated, the misdiagnosis is the negligent act or omission. The misdiagnosis is not the injury. The misdiagnosis may or may not result in an injury; and, that injury may occur concurrently, or there may be a delay between the misdiagnosis and the injury.

¶ 32. In addition, *Webb's* reliance upon *Olson v. St. Croix Valley Memorial Hospital*, 55 Wis. 2d 628, 201 N.W.2d 63 (1972), in suggesting that the alleged misdiagnosis is the actionable injury, is misplaced. In *Olson*, Judy Olson had received a blood transfusion with an incompatible Rh factor in 1962, which, allegedly, resulted in the death of two of her children, one

shortly after birth in 1966 and one stillborn in 1969. *Id.* at 632–33. The court concluded that the negligent act and the injury occurred at the same time; that is, the negligent act, the transfusion, caused the injury, Olson's impaired "capacity for future childbearing." *Id.* at 633.

¶ 33. In *Olson*, there was an affirmative negligent act, the improper transfusion, which immediately resulted in an injury to Judy Olson. In contrast, in *Webb*, the alleged negligence was an omission, the failure to diagnose the brain tumor. But in *Webb*, there was no evidence of an injury that immediately resulted from that misdiagnosis, nor was there evidence of any injury that ever resulted from the alleged misdiagnosis, *e.g.*, a cancerous condition that became fatal as a result of a misdiagnosis. *See St. George v. Pariser*, 484 S.E.2d at 891 (citing *Jenkins v. Payne*, 465 S.E.2d 795 (Va. 1996)). *Olson* has no bearing on the misdiagnosis claim in *Webb*, just as it has no bearing on the alleged misdiagnosis claim here.

¶ 34. As our long-time precedent has established, the negligence and its result—an injury—should be considered separately. The negligence must cause an injury before there is an accrual of a claim. *Meracle v. Children's Serv. Soc'y*, 149 Wis. 2d 19, 26, 437 N.W.2d 532 (1989). Accordingly, that part of *Webb* that holds that a misdiagnosis is an actionable injury is, like that similar part of *Koschnik*, withdrawn because it is in error.

¶ 35. Skemp also relies upon *Elfers v. St. Paul Fire & Marine Ins. Co.*, 214 Wis. 2d 499, 571 N.W.2d 469 (Ct. App. 1997) to contend that a misdiagnosis is an actionable injury. However, *Elfers* supports the court's holding here today rather than Skemp's position.

¶ 36. *Elfers* concerns the accrual of a medical malpractice claim against a doctor and a radiologist. Christine Elfers had fallen and broken her right arm in 1985 when she was four years old. *Id.* at 501. The doctor and the radiologist diagnosed the fracture but failed to detect a dislocation in the elbow that resulted from that same fall. *Id.* In 1989, Elfers' right arm was x-rayed again, and her parents were then told of the dislocation and that it had been caused by the 1985 accident. *Id.* However, the dislocation was not treated. *Id.* at 502. In 1993, Christine experienced symptoms related to the dislocation and, in 1996, filed an action against the radiologist and doctor, among others. *Id.*

¶ 37. The court of appeals determined the circuit court erred in granting the defendants' motion for summary judgment which claimed that the action was untimely. The court of appeals held that there was a disputed fact as to the date of the injury, which would trigger the limitations period. *Id.* at 505–06. Regarding Wis. Stat. § 893.55(1), the court of appeals noted that "[b]efore the time limitation under this statute begins to run, there must first be a negligent act and an injury caused by that act." *Id.* at 504 (citing *Meracle*, 149 Wis. 2d at 26). The court of appeals could identify the negligent act and when it occurred—the failure to diagnose the dislocation in 1985. *Id.* at 504. However, the court could not determine the injury and when it occurred. *Id.* at 505–06. Relying upon our decision in *Meracle*, the court of appeals indicated that there was no injury, no enforceable claim for the misdiagnosis, until such time "when it became *reasonably certain* that Christine would suffer compensable damages as a result of the negligent act." *Id.* at 505 (emphasis in original).

¶ 38. In *Meracle*, we held that the adoptive parents had no compensable injury against the adoption agency, which negligently misrepresented to them their adopted child's susceptibility to Huntington's disease, until the child developed the disease. 149 Wis. 2d at 29–30. At that point, "[t]hey could then demonstrate with reasonable medical certainty that Erin [the child] would need extensive future medical care." *Id.* Similarly, in *Elfers*, there was no harm to Christine, notwithstanding the failure to diagnose the dislocated elbow, until she suffered some physical or pecuniary injury as a result. *Elfers* thus corresponds with our holding here, that until the misdiagnosis results in a harm that would not have occurred but for the misdiagnosis, there is no injury to trigger the running of the statute of limitations.

¶ 39. Skemp, however, claims that the following paragraph from *Elfers* supports its contention that a misdiagnosis is a medical malpractice injury:

> This does not mean that we agree with Christine's apparent contention that an asymptomatic dislocated elbow is not an injury. If this medical condition will inevitably result in some disability, the plaintiff has sustained an injury as of the date the failure to diagnose occurred. Our law does not permit a claimant who possesses a cause of action to wait until the full effect of the injury has developed before filing a claim.

*Id.* at 506. Skemp is incorrect. Nothing in the above language changes the prerequisite that a negligent act or omission, such as a misdiagnosis, must cause an injury in order to be actionable. If, however, as *Elfers* suggests, a condition for which a patient seeks treatment immediately develops into a more serious

problem as a result of the misdiagnosis, then the patient has sustained an injury caused by the failure to diagnose on the date that there was a failure to diagnose.[8] Indeed, once a claimant has sustained an injury and has an enforceable claim, that claimant cannot sit on that claim until all consequential damages have come to fruition. *See e.g., Nierengarten v. Lutheran Social Serv.*, 219 Wis. 2d 686, 701, 580 N.W.2d 320 (1998) (adoptive parents' claims accrued when their adopted child was first diagnosed with attention deficit disorder, even though extraordinary medical expenses were not incurred until later).

¶ 40. Nonetheless, *Elfers'* indeterminate outcome has no impact upon our holding. The injury that resulted from the misdiagnosis was in dispute there. Here, the injury that resulted from the misdiagnosis is not in dispute. There is no evidence Skemp's failure to diagnose properly the source of Jennifer's headaches would have resulted in an immediate and inevitable injury to Jennifer. Instead, there is evidence that suggests the opposite, namely, that the AVM could have been treated until shortly before it ruptured.

¶ 41. The instant case is more akin to other cases wherein the negligent act does not occur concurrently with the injury it causes. *See e.g., Meracle*, 149 Wis. 2d 19. However, "[i]n the medical malpractice cases so far to come before the Wisconsin Supreme Court, the malpractice and the harm have been coincidental." *Neubauer v. Owens-Corning Fiberglas Corp.*, 686 F.2d 570, 573 (7th Cir. 1982). Yet, there has been a medical

---

[8] The phrase that "this medical condition will inevitably result in some disability" indicates that, in certain circumstances, the failure to diagnose properly a condition results in an immediate injury to the patient. We have no evidence of such circumstances here.

malpractice case where the malpractice and the injury have not been coincidental decided by the court of appeals, *Fojut v. Stafl*, 212 Wis. 2d 827, 569 N.W.2d 737 (Ct. App. 1997). In *Fojut,* Helen Fojut had a tubal ligation to prevent further pregnancies; subsequently, she became pregnant. *Id.* at 829. The court of appeals rejected, as we do here, the defendants' contention that the date of the injury was the date that the negligence occurred. *Id.* at 831. The court of appeals instead determined that the negligent act was the surgery, and the injury that resulted from that negligence was the pregnancy. "There was no physical injurious change to Helen's body until she became pregnant." *Id.* Similarly, here, there was no injurious change as a result of Skemp's misdiagnosis until the AVM ruptured, or until the AVM could no longer be treated.

¶ 42. If a negligent act or omission, such as a misdiagnosis, triggered the limitations period, as Skemp suggests, potential claimants who have not yet been injured would be seeking relief for damages that may never occur. If we were to conclude otherwise, we would be "creat[ing] incentives for claimants to rush to the courthouse to initiate anticipatory litigation." *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 230, 601 N.W.2d 627 (1999). Extending this consideration to the field of health care, if a misdiagnosis was an injury that would start the limitations period running, patients would have to obtain a second or third opinion or risk losing a claim for medical malpractice. The result would be to drive up health care costs, even though rising health care costs prompted the legislature to modify the statute of limitations for medical malpractice claims, at least for minors. *See Aicher v. Wisconsin Patients Compensation Fund*, 2000

WI 98, ¶ 22, 237 Wis. 2d 99, 613 N.W.2d 849. Until there is an injury, any damages sought would be speculative. *See Sopha*, 230 Wis. 2d at 229. Hence the rule that "recovery for damages may be had for 'reasonably certain injurious consequences of the tortfeasor's negligent conduct, not for merely possible injurious consequences.' " *Id.* at 226–27 (quoting *Brantner v. Jenson*, 121 Wis. 2d 658, 663–64, 360 N.W.2d 529 (1985)).

¶ 43. Skemp's contention that the alleged misdiagnosis is the injury here that triggered the running of the statute of limitations ignores the causation element in medical malpractice claims. Skemp must, but does not, establish the necessary causal nexus between the alleged misdiagnosis and Jennifer's headaches. *See Fischer v. Ganju*, 168 Wis. 2d 834, 857, 485 N.W.2d 10 (1992). Skemp's failure to diagnose the source of Jennifer's headaches did not cause the headaches, nor cause the AVM. Jennifer's headaches did not make it reasonably certain that she had been injured as a result of the misdiagnosis. *See Meracle*, 149 Wis. 2d at 27. Nor did those headaches establish, to a reasonable degree of medical certainty, that Jennifer was to incur future medical expenses or other harm for which she could seek recovery. *Id.* at 29–30. As in *St. George v. Pariser*, 484 S.E.2d 888, the headaches were the initial condition for which Jennifer sought diagnosis and treatment from Skemp; they were not the injury that resulted from the misdiagnosis. Indeed, Jennifer's estate is not seeking damages for the pain and suffering caused by the headaches, but rather for the pain and suffering that resulted from the rupture.

¶ 44. Skemp also contends that the misdiagnosis was an actionable injury because Jennifer's headaches increased in frequency and intensity. However, it was

not shown that the misdiagnosis caused more intense and more frequent headaches. The headaches, to varying degrees of intensity and frequency according to the medical records, existed before and after the misdiagnosis.

¶ 45. Skemp has not shown that there was an injury that resulted from the alleged misdiagnosis that occurred prior to March 16, 1995, which would have rendered the action filed here untimely. Accordingly, we conclude that Skemp failed to establish a limitations defense to entitle defendants to summary judgment. Moreover, the evidence submitted in opposition to Skemp's summary judgment motion indicates that the action was timely filed. The evidence indicates that an actionable injury occurred in May 1995. That actionable injury which resulted from the alleged misdiagnosis occurred either at the time that Jennifer's AVM ruptured, or at the time that Jennifer's AVM could no longer be treated. Since it is undisputed that an actionable injury occurred at some point in May 1995, and this action was filed within three years of that time, on March 16, 1998, it is timely under Wis. Stat. § 893.55(1)(a).[9]

¶ 46. Skemp makes a final argument, though, that, as a policy matter, this action should have been filed one year after Jennifer died. That is, the date of

[9] Our holding rests solely upon the construction of Wis. Stat. § 893.55(1). We need not, and do not, rely upon the "continuing course of negligent treatment" doctrine this court adopted in *Tamminen*, 109 Wis. 2d 536, to determine whether this action was timely or not. Consequently, we need not consider whether the statements of Jennifer's mother and boyfriend are admissible, since they were offered only in support of applying that doctrine here.

Jennifer's death was the last date that the Pauls could have discovered that she had been injured by the misdiagnosis, and this action could have been filed by then. Skemp's contention rests upon the discovery rule of accrual in Wis. Stat. § 893.55(1)(b) which provides that a medical malpractice claim shall be commenced "[o]ne year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered. . . ." However, Skemp ignores the policy reflected in the introductory paragraph of § 893.55(1), that the action "shall be commenced within the *later of*: (a) Three years from the date of the injury, *or* (b) One year from the date the injury was discovered [etc.]." (Emphasis added.)

¶ 47. Typically, the discovery rule of accrual embodied in Wis. Stat. § 893.55(1)(b) extends the accrual time, specifically, where the negligence and the injury occurred at the same time, but the injury was latent. *See Claypool v. Levin*, 209 Wis. 2d 284, 292–93, 562 N.W.2d 584 (1997). Section 893.55(1)(b) allows a claimant to bring a medical malpractice claim where an injury was discovered more than three years after the injury occurred, so long as the action is brought within one year from the date of the discovery of the injury, or within one year of when, with the exercise of reasonable efforts, the injury should have been discovered, and no "more than 5 years from the date of the act or omission." Wis. Stat. § 893.55(1)(b).

¶ 48. We would be remiss if we failed to note that in medical malpractice matters, a tension between the injury rule and the discovery rule of accrual arises in those cases where there is a lengthy delay between the negligent act or omission and the resulting injury. Under the discovery rule of accrual in Wis. Stat.

§ 893.55(1)(b), "an action may not be commenced under this paragraph more than 5 years from the date of the act or omission." The injury rule of accrual apparently does not have any similar limitation. Wis. Stat. § 893.55(1)(a). Consequently, a medical malpractice action might be able to be timely filed more than five years after the act or omission under the injury rule of accrual where, for example, the injury occurs more than two years after the negligent act or omission and the action is filed within three years from the injury. In contrast, § 893.55(1)(b) clearly bars an action filed more than five years after the negligent act or omission even though the injury was not discovered until after the five years had passed. *See Aicher v. Wisconsin Patients Compensation Fund*, 2000 WI 98, ¶¶ 10,11, 237 Wis. 2d 99, 613 N.W.2d 849.

¶ 49. The plain language of Wis. Stat. § 893.55(1) does not indicate whether the five-year statute of repose in § 893.55(1)(b) applies to actions governed by the injury rule of accrual in § 893.55(1)(a). According to the Legislative Reference Bureau's Bill Drafting Manuals that may have been referred to when § 893.55(1) was drafted in 1979, paragraphs are to be "designated by letters of the alphabet enclosed in parentheses." *Wisconsin Bill Drafting Manual* at 16 (October 1976); *Wisconsin Bill Drafting Manual*, 33 (1979–1980); *see also* § 35.18 (statute regarding printing of Wisconsin statutes provides that "[e]ach paragraph shall be designated by a letter or letters enclosed in parentheses"). These drafting manual guidelines may indicate that repose limitation may only apply to the discovery rule of accrual in paragraph (b). However, the timeliness of an action filed within three years of the date of the injury, but more than five years after the negligent act or omission is not before

us. The action at issue here was filed less than five years after the alleged negligent omission. We nonetheless point out the possible conflict between actions that arise under the injury rule of accrual and the discovery rule of accrual. In pointing out this potential conflict, we urge the legislature to provide guidance by resolving it. (Indeed, this court has struggled with the impact of injury and discovery rules of accrual on medical malpractice claims. *See Aicher*, 2000 WI 98.) The legislature has, in the past, addressed the problem of the statute of limitations in medical malpractice actions. In so doing, the legislature appropriately considered "the policy issues involved." *See Rod v. Farrell*, 96 Wis. 2d 349, 355, 291 N.W.2d 568 (1980).

¶ 50. However, in cases such as this one, where the injury did not occur at the same time as the negligence, the discovery rule of accrual may provide a shorter time in which the claimant would bring her claim than the injury rule would provide. Yet, contrary to Skemp's contention, the discovery rule in Wis. Stat. § 893.55(1)(b) was not intended to shorten the time in which a claimant had to bring a medical malpractice action. This is evident from the words in the introduction that the claimant could choose from the later of the two accrual rules, injury or discovery. In *Fojut*, the injury accrual rule in § 893.55(1)(a) applied because the claim accrued on the date of injury. 212 Wis. 2d at 830. The Fojuts were not required to file their action one year after they discovered the injury, the pregnancy, even though, presumably, they could have. In fact, that time passed before they filed their action. *See id.* at 830 n.1.

¶ 51. Here, the three-year injury rule of accrual in Wis. Stat. § 893.55(1)(a) provided a longer time in

which the Pauls could file this action than the discovery rule of accrual in § 893.55(1)(b). The provision in § 893.55(1) that the action had to be filed by the "later of" the injury or the discovery thereof gave them a choice. The Pauls were thus entitled to file this action within three years of Jennifer's injury, and they did not have to file it sooner, even though they may have discovered the injury sooner.[10]

## IV

¶ 52. We make no determination whatsoever regarding the merits of the Pauls' claims, or whether they will be able to prove the elements of their negligence action. We have only determined the timeliness of the commencement of the action.

¶ 53. In summary, we conclude that the alleged misdiagnosis in this case was not the injury that triggered the running of the limitations period in Wis. Stat. § 893.55(1)(a). Instead, based on the information presented, the injury that resulted from the alleged misdiagnosis occurred when the rupture of the AVM in Jennifer's brain happened on May 22, 1995, or it occurred at that point earlier in May when, more likely than not, Jennifer's AVM could not have been successfully treated. According to the affidavit of Pauls' expert, proper diagnosis prior to May 1, 1995, would have avoided the harm she subsequently experienced. It was this injury that triggered the statute of limita-

[10] Skemp makes a related argument that the court of appeals decision should be upheld because it reflects public policy considerations regarding medical malpractice actions. However, our decision upholds the public policy the legislature specifically adopted in Wis. Stat. § 893.55(1), wherein the legislature both allowed, and limited, actions in relation to the injury or the discovery of the injury.

tions, not the alleged misdiagnosis in November or December, 1994. Consequently, since the instant action was commenced on March 16, 1998, it was commenced well within the three-year statute of limitations.[11]

---

[11] The parties themselves did not claim that this action was either timely or untimely as a wrongful death action. Accordingly, we do not address that issue, or the contention made by *amicus*, the Wisconsin Academy of Trial Lawyers, that the action was timely as a wrongful death action under Wis. Stat. § 893.54(2). However, this court stated in *Rineck v. Johnson*, 155 Wis. 2d 659, 671, 456 N.W.2d 336 (1990) (overruled in part, *Chang v. State Farm Ins. Co.*, 182 Wis. 2d 549, 514 N.W.2d 399 (1994)) that "there is no logical distinction between injury and death claims arising out of medical malpractice. Once medical malpractice produces a loss, a remedy exists regardless whether the consequence is injury or death." *See also Czapinski v. St. Francis Hosp., Inc.*, 2000 WI 80, ¶ 18, 236 Wis. 2d 316, 613 N.W.2d 120. Notably, though, *Rineck* and *Czapinski* dealt with damages, not statutes of limitations. Section 893.55(1) could be read as covering wrongful death actions against health care providers, that is, those actions "to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, *regardless of the theory on which the action is based*." Potentially, then, there is a conflict where a wrongful death action filed against a health care provider which would have been timely at the time of the decedent's death and thus timely under § 893.54(2), but is barred by § 893.55 because it was filed three years after the decedent's death. This potential conflict is not before the court, and has not been briefed or argued by the parties. Apparently, the parties concluded that if the medical malpractice claim was timely filed, then the wrongful death claim, simultaneously filed and indisputably filed within three years of Jennifer's death, was also timely filed.

Also, the parties did not raise, and, accordingly, we do not address, any issues regarding the limitations, if any, on dam-

¶ 54. The defendants have failed to establish that the alleged misdiagnosis was an injury that triggered the running of the statute of limitations, which, in turn, would have rendered this action untimely. Accordingly, summary judgment in favor of the defendants was improper. The decision of the court of appeals, which affirmed that circuit court's granting of summary judgment, is hereby reversed, and the action is remanded to the circuit court for further proceedings.

*By the Court.*—The court of appeals decision is reversed and the cause remanded to the circuit court for further proceedings.

ages that may be recovered. *See Rineck,* 155 Wis. 2d 659; *Czapinski,* 2000 WI 80.