Joseph S. Brusa, Jr., Plaintiff-Appellant,

Estate of Joseph S. Brusa, Sr. by its Special Administrator, Rebecca Brusa, Plaintiff,

Blue Cross & Blue Shield United of Wisconsin, Involuntary-Plaintiff,

v.

Mercy Health System, Inc., Robert A. Fasano, M.D. and Ohio Hospital Insurance Company, Defendants-Respondents,

Alan S. Muraki, M.D. and Injured Patients & Families Compensation Fund, Defendants.

Court of Appeals

*No. 2006AP1125. Submitted on briefs February 15, 2007. —Decided June 6, 2007.*

2007 WI App 166

(Also reported in 737 N.W.2d 1.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jerome A. Hierseman* and *Lora A. Kaelber* of *Gray & End, L.L.P.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Curtis C. Swanson* and *David J. Pliner* of *Corneille Law Group, LLC*, Madison.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. SNYDER, P.J. Joseph S. Brusa, Jr. (Joseph) appeals from a summary judgment dismissing his negligence claim against Dr. Robert A. Fasano. Joseph's claim derives from the death of his father, Joseph S. Brusa, Sr. (Brusa), from colon cancer. Brusa died four months after Joseph was born. The negligence claim rests on allegations of a misdiagnosis by Dr. Fasano in December 2002, approximately eighteen months before Joseph was born. The circuit court granted summary judgment to Dr. Fasano on public policy grounds, stating that a child not yet conceived at the time of the alleged negligence cannot bring a negligence claim. The right to pursue a derivative claim for medical malpractice is determined by the plaintiff's status at the time of the patient's injury. *See Conant v. Physicians Plus Med. Group, Inc.*, 229 Wis. 2d 271, 274, 600 N.W.2d 21 (Ct. App. 1999). An actionable injury arises when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis. *Paul v. Skemp*, 2001 WI 42, ¶ 25, 242 Wis. 2d 507, 625 N.W.2d 860. Whether Joseph was already conceived when an actionable injury to his father arose is a genuine issue of material fact that cannot be resolved by summary judgment. Accordingly, we reverse the circuit court and remand for further proceedings.

## BACKGROUND

¶ 2. On December 21, 2002, Brusa went to the emergency department at Mercy Health System in Janesville with complaints of left flank pain. Tests showed abnormal wall thickening of the descending colon. Dr. Alan Muraki concluded there may be inflammation or ischemia and recommended further correlation. On December 27, Brusa followed up with Dr.

Robert Fasano, who diagnosed "probable diverticulitis" and recommended that he have a colonoscopy within four to five weeks.

¶ 3.  Brusa returned to Dr. Fasano on January 21, 2003, with ongoing complaints. Dr. Fasano recommended a colonoscopy, which was performed in February. The colonoscopy revealed a tumor. Brusa had surgery to remove the tumor, which was cancerous, and then began chemotherapy on March 10. He continued his first round of chemotherapy until August. Brusa's cancer returned in September 2003.

¶ 4.  In 2003, facing Brusa's cancer diagnosis, Brusa and his longtime girlfriend, Rebecca, decided to marry and try to have a child. Rebecca learned that she was pregnant in November 2003, and she married Brusa on March 10, 2004. Joseph was born July 9, approximately four months before Brusa died on November 19, 2004.

¶ 5.  This lawsuit against Mercy Health System, Inc., Dr. Fasano and others was filed on October 5, 2004.[1] Brusa claimed damages for pain and suffering that occurred as a result of Dr. Fasano's negligent delay in correctly diagnosing colon cancer. Joseph sued to recover for the loss of society and companionship of his father. Upon Brusa's death, the complaint was amended to state a claim on behalf of Brusa's estate.

¶ 6.  Dr. Fasano moved for partial summary judgment, asking the court to dismiss Joseph's claim. The circuit court granted the motion, holding that "it would

---

[1] In May 2006, the parties agreed to dismiss Dr. Alan Muraki from the case. The stipulation and order for dismissal was not filed prior to the circuit court's stay pending this appeal; accordingly, only Mercy, Dr. Fasano and Ohio Hospital Insurance Company (together, Dr. Fasano) are responding to the appeal.

be against public policy to allow a derivative claim for damages for someone who was not conceived and did not exist in any way at the time that the . . . initial claim for negligence arose." Joseph appeals.

## DISCUSSION

¶ 7. Summary judgment is appropriate where the pleadings, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2005–06).[2] This case comes to us framed as a public policy debate.[3] Whether public policy considerations preclude a cause of action is a question of law, to be determined by the court. *Hass v. Chicago & N.W. Ry. Co.*, 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970). However, there are cases that require a factual resolution in the trial court before public policy factors will be applied by the court. *Id.* at 327. In negligence actions, it is often better to examine policy considerations after the facts have been established. *See Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 13, 236 Wis. 2d 137, 613 N.W.2d 110. Because the legal issues presented here are driven by the facts of the case, we conclude that a resolution based on public policy is premature.

¶ 8. The crux of the dispute is the right of a child to pursue a derivative medical malpractice claim for the death of the parent. The right to bring a derivative

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[3] Dr. Fasano has stipulated to the allegation of negligence for purposes of this appeal.

claim for medical malpractice is determined by the claimant's status at the time of the victim's injury. *See Conant*, 229 Wis. 2d at 274. A child who has been conceived but not yet born at the time of the injury may bring a derivative claim for loss of society and companionship when medical malpractice causes the death of a parent. *Cf. Grapentin v. Schrieber*, 167 Wis. 2d 733, 739, 482 N.W.2d 904 (1992) (a posthumously born legitimate child can bring a wrongful death claim, even though the child was not born at the time of the accident); *Ellis v. Humana of Fla., Inc.*, 569 So. 2d 827, 828–29 (Fla. Dist. Ct. App. 1990) (child born six weeks after the death of parent may recover under wrongful death act); *Angelini v. OMD Corp.*, 575 N.E.2d 41, 45–46 (Mass. 1991) (a child conceived prior to the injury to the parent and subsequently born alive may recover for loss of parental consortium). Whether Joseph can maintain his claim depends on his status, more specifically whether he was conceived, at the time of Brusa's alleged injury.

¶ 9.  Much of the jurisprudence surrounding the date of injury in medical malpractice cases arises in the context of a statute of limitations dispute. Though that is not the issue here, the cases demonstrate that courts have interpreted the date of injury differently over the years. At one time, the date of the misdiagnosis might have been considered to be the date of injury. *See, e.g., Elfers v. St. Paul Fire & Marine Ins. Co.*, 214 Wis. 2d 499, 506, 571 N.W.2d 469 (Ct. App. 1997) (where doctors failed to diagnose an asymptomatic dislocated elbow, the court held that if the dislocation would "inevitably result in some disability, the plaintiff has sustained an injury as of the date the failure to diagnose occurred"). When deciding Dr. Fasano's summary judgment motion, the circuit court seems to have employed this analysis.

143

The court determined that Joseph had no cause of action because he was not yet conceived when the negligence claim arose.

¶ 10. This approach was rejected in *Paul*, 242 Wis. 2d 507, ¶ 20, where the court held that "it is not the negligence, but the injury resulting from the negligent act or omission which initiates the limitation period." In *Paul*, the alleged negligence (the failure to correctly diagnose the cause of the patient's headaches) preceded the resulting injury (the rupture of an arteriovenous malformation causing extensive hemorrhaging). *Id.*, ¶ 21.

¶ 11. The *Paul* court found the reasoning set forth in *St. George v. Pariser*, 484 S.E.2d 888 (Va. 1997), persuasive in its analysis of the date of injury. In *St. George*, the physician had diagnosed a patient's mole as benign in 1991. *Id.* at 889. Two years later, Dr. Pariser reviewed the patient's records and diagnosed the mole as cancerous. *Id.* By that time, the melanoma had become potentially fatal. *Id.* at 890. The underlying condition, the cancer, existed both before and after the alleged misdiagnosis in 1991. The Virginia Supreme Court observed that the generic disease of cancer was not the actionable injury because St. George had cancer when she first sought evaluation in 1991. "Pariser's negligence could not have been the cause of that medical condition. St. George's injury was the change in her cancerous condition which occurred when the melanoma altered its status . . . ." *Id.* at 891. The Virginia court held that, because every misdiagnosis case involves a patient who has some type of medical problem at the time the physician is consulted, "the injury upon which the cause of action is based is not the original detrimental condition; it is the injury which later occurs because of the misdiagnosis and failure to treat."

*Id.* Thus, "[t]he misdiagnosis may or may not result in an injury; and, that injury may occur concurrently, or there may be a delay between the misdiagnosis and the injury." *Paul*, 242 Wis. 2d 507, ¶ 31. The *Paul* court focused on the "injurious change" that occurs as a result of a misdiagnosis. *Id.*, ¶ 41.

¶ 12. Jennifer Paul suffered from persistent headaches, for which she sought treatment from her doctors. No doctor accurately diagnosed her condition, which was a malformed blood vessel in her brain. *Id.*, ¶¶ 4–5. Several years after seeking treatment for her headaches, the malformation in her brain ruptured and caused extensive hemorrhaging. *Id.*, ¶ 5. Paul died one day after the rupture. *Id.* In determining when the injury occurred, the court stated that "a misdiagnosis, in and of itself, is not, and cannot, be an actionable injury . . . . The actionable injury arises when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis." *Id.*, ¶ 25.

¶ 13. In Paul, the supreme court held that the patient's injury for purposes of the statute of limitations did not occur on the day her condition was misdiagnosed; rather, the injury occurred *either* at the time that the patient's blood vessel ruptured *or* at the time that her condition could no longer be treated. *Id.*, ¶ 45. The court did not set the date of injury as a matter of law, but recognized two possible alternatives.

■
¶ 14. Here, Brusa's date of injury has not been established and is not ascertainable from the record. An injurious change may have occurred shortly after Brusa first consulted with Dr. Fasano, it may have occurred four weeks later when Brusa was to have had a colonoscopy, it may have occurred at some later date, or it may be that Brusa's cancer was untreatable even before he

first consulted Dr. Fasano. Even if we accept Dr. Fasano's concession of negligence, which was offered only for the sake of argument on appeal, this question remains: When did Dr. Fasano's misdiagnosis cause Brusa "greater harm" than existed on December 27, 2002? Where a genuine issue of material fact exists, summary judgment should not be granted. *See* Wis. Stat. § 802.08(2).

## CONCLUSION

¶ 15. Joseph's derivative claim depends on whether he was conceived at the time of Brusa's injury; therefore, the circuit court's analysis, which focused on the date of the alleged misdiagnosis, was misguided. Furthermore, because the date of injury is not ascertainable as a matter of law, the court improperly granted summary judgment on the claim. Finally, questions of public policy in negligence actions are more appropriately addressed after a factual record has been made. For these reasons, we reverse the order for summary judgment and remand the matter for further proceedings.

*By the Court.*—Order reversed and cause remanded with directions.